# United States Court of Appeals
## For the First Circuit

No. 15-1531

STEPHANIE C., Individually and as Guardian of M.G.,

Plaintiff, Appellant,

v.

BLUE CROSS BLUE SHIELD OF MASSACHUSETTS HMO BLUE, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Lynch, Selya and Kayatta,
Circuit Judges.

Brian S. King, with whom Law Firm of Brian S. King and Jonathan M. Feigenbaum were on brief, for appellant.
Joseph D. Halpern, with whom Law Office of Joseph Halpern and Donald J. Savery were on brief, for appellee.

February 17, 2016

**SELYA**, **Circuit Judge**.  In this benefits-denial case, brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), codified in relevant part at 29 U.S.C. §§ 1001-1461, Stephanie C. (Stephanie), individually and on behalf of her minor son M.G., challenges a decision of the claims administrator, Blue Cross Blue Shield of Massachusetts HMO Blue, Inc. (BCBS), partially denying her claim for benefits.  The denial related to some charges incurred during M.G.'s stay at a residential/educational mental healthcare facility.  The district court upheld the partial denial. See Stephanie C. v. BCBS, No. 13-13250, 2015 WL 1443012, at *12 (D. Mass. Mar. 29, 2015).

In this venue, Stephanie asserts that the district court erred in failing to find that BCBS committed procedural violations; that the court appraised her benefits-denial claim through the wrong lens; and that the court, in all events, erroneously upheld the partial denial of benefits.  We reject Stephanie's claims that BCBS committed procedural violations.  From that point forward, however, the case raises important questions concerning what a plan sponsor or claims administrator must do to reserve discretion in the handling of benefits claims.  Here, the district court did not hold BCBS to these obligations and, thus, employed the wrong standard of review when considering the partial denial of benefits. Accordingly, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

Stephanie's son, M.G., is a derivative beneficiary of an ERISA-regulated group health insurance plan (the Plan) furnished by his father's employer, Harmonix Music Systems, Inc. (Harmonix). The Plan is denominated as a "Preferred Blue PPO Preferred Provider Plan," the terms of which are set out in a subscriber certificate (the Certificate).  In pertinent part, the Certificate makes clear that coverage under the Plan remains subject to a determination of medical necessity made by BCBS.  It specifies that the Plan covers treatment for psychiatric illnesses, including biologically based conditions (e.g., autism) and, for children until age nineteen, for non-biologically based conditions (e.g., behavioral problems). Such benefits do not accrue for residential, custodial, or medically unnecessary services, such as those performed in "educational, vocational, or recreational settings."  The Certificate also stipulates that only the least intensive type of setting required for treatment of a condition will receive approval.  Any non-emergency inpatient course of treatment needs approval before the patient is admitted to the facility.

The premium account agreement (the PAA) defines the relationship between participating employers — such as Harmonix — and BCBS.  It provides that ERISA governs the claims administration framework.  Under it, Harmonix is the plan administrator and BCBS is the claims administrator.  The PAA further states that BCBS "is

the fiduciary to whom [Harmonix] ha[s] granted full discretionary authority" and that "[a]ll determinations of [BCBS] . . . will be conclusive and binding on all persons unless it can be shown that [a particular] determination was arbitrary and capricious."

M.G. experienced a number of mental health issues beginning in early childhood. A detailed description of his mental health history is set forth in the district court's rescript, see Stephanie C., 2015 WL 1443012, at *1-6, and we assume the reader's familiarity with that account. For present purposes, a sketch (concentrating on the pertinent period) suffices.

M.G.'s condition intensified in severity in the summer of 2010 (the summer between his freshman and sophomore years in high school). At that time, he became physically aggressive toward his parents and attended weekly mental health therapy sessions. Although enrolled in an intensive outpatient educational facility, he continued to exhibit aggressive behavior that led to multiple arrests. His problems escalated because he steadfastly refused to take medications despite a court order requiring him to do so.

Concerned about the apparent inadequacy of his care, Stephanie enrolled M.G. (at her own expense and without prior approval) in Vantage Point by Aspiro (Aspiro), a wilderness therapy program based in Utah, which specializes in neurodevelopmental

disorders.[1] M.G. remained at Aspiro from October of 2010 to January of 2011. His psychological evaluators there diagnosed him as having Asperger's Syndrome, anxiety disorder, and attention deficit and hyperactivity disorder. Noticing some improvement, they recommended that he continue therapy in a longer-term setting.

On the advice of a consultant and without prior approval, Stephanie proceeded to enroll M.G. in Gateway Academy (Gateway), a private school treatment center in Utah that BCBS insists is "out of network" (that is, not in a contractual relationship with BCBS). While at Gateway, M.G.'s aggressive and emotionally erratic behavior continued; among other things, he engaged in inappropriate sexual contact and committed a variety of petty criminal offenses.

In April of 2011, Harmonix submitted claims to BCBS for three sets of psychiatric evaluations and consultation services (performed during the period from January 27, 2011 to February 23, 2011) in connection with M.G.'s admission to Gateway. In late June, BCBS informed Harmonix that Gateway was a non-covered provider but that it would cover the three sets of evaluations "as a one-time exception." Gateway itself submitted claims in September of 2011 and March of 2012 seeking reimbursement for

---

[1] The Aspiro charges are not at issue in this appeal. The partial denial of benefits challenged by Stephanie relates only to M.G.'s subsequent enrollment at Gateway Academy (discussed <u>infra</u>).

principally residential services rendered to M.G. dating back to January of 2011.

In an informal process, BCBS denied these room and board claims because the services were not medically necessary and the submitted documentation did not support the need for an inpatient admission. In an explanatory letter dated May 25, 2012, BCBS advised M.G.'s father that its denial of benefits was based largely upon an evaluation conducted by Dr. Elyce Kearns, a psychiatrist-reviewer, who relied upon "InterQual," a nationally recognized set of criteria used to assess the level of care for mental health patients. Given Dr. Kearns' evaluation, BCBS concluded that M.G.'s "clinical condition does not meet the medical necessity criteria required for an acute residential psychiatric stay."

About a year later, Stephanie requested and received a sheaf of pertinent records from BCBS. She then contested the denial of coverage through BCBS's internal review process. In support of her appeal, Stephanie furnished documentation from M.G.'s psychotherapists, evaluators, and educators in addition to police reports and juvenile court records. Collectively, these materials described M.G.'s difficulties involving physical and verbal aggression, emotional volatility, lack of impulse control, and thinking errors. This pattern of conduct, Stephanie maintained, posed a danger to M.G. and to others.

A second psychiatrist-reviewer, Dr. Kerim Munir, scrutinized the administrative record and recommended that BCBS uphold the denial of benefits. He cited the absence of any medical necessity for the placement and reiterated the conclusions of the first psychiatrist-reviewer. On June 19, 2013, BCBS denied the internal appeal in a letter to Stephanie.

Stephanie repaired to the federal district court, suing to recover the denied benefits. See 29 U.S.C. § 1132(a)(1)(B). In due course, the parties cross-moved for summary judgment.[2] The district court granted BCBS's motion and denied Stephanie's cross-motion. See Stephanie C., 2015 WL 1443012, at *12. This timely appeal followed.

## II. ANALYSIS

We subdivide our analysis into two segments, first addressing Stephanie's claimed procedural irregularities and then addressing the benefits-denial claim itself.

### A. Alleged Procedural Violations.

At the outset, Stephanie argues that BCBS committed serious procedural violations in failing to engage in dialogue

---

[2] As we have explained before, motions for summary judgment in this context are nothing more than vehicles for teeing up ERISA cases for decision on the administrative record. See Scibelli v. Prudential Ins. Co., 666 F.3d 32, 40 (1st Cir. 2012). The burdens and presumptions normally attendant to summary judgment practice do not apply. See id.

with her, to answer her questions, and to take into account the materials that she submitted in the course of the internal review. Affording de novo review to these claims of error, see Wenner v. Sun Life Assur. Co., 482 F.3d 878, 881 (6th Cir. 2007), we reject them.

> ERISA requires that every benefit plan
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The Secretary of Labor has promulgated interpretive regulations, which mandate that the denial of benefits spell out the specific reasons for an adverse determination, delineate the particular plan provisions on which the determination rests, furnish a description of any additional material necessary to perfect the claim, and provide a description of the plan's review procedures and applicable time limits. See 29 C.F.R. § 2560.503-1(g)(1). These requirements serve the salutary purpose of ensuring that a claimant is told the reasons for a denial of her benefits claim and how to take an internal appeal if such a denial should occur. See Niebauer v. Crane & Co., Inc., 783 F.3d 914, 926-27 (1st Cir. 2015); DiGregorio v.

- 8 -

Hartford Comprehensive Emp. Benefit Serv. Co., 423 F.3d 6, 14 (1st Cir. 2005).

The "full and fair review" contemplated by section 1133 entails a process that permits a claimant to supply supplementary "written comments, documents, records, and other [related] information" to the claims administrator. See 29 C.F.R. § 2560.503-1(h)(2). In turn, the claims administrator must furnish the claimant, upon request and free of charge, all records and documents relevant to the claim. See id. The claims administrator also has a duty to consider the materials submitted by the claimant. See id. Last but not least, even if the claimant shows that procedural irregularities have occurred in the course of a review, we typically require her to show prejudice as well. See Bard v. Bos. Shipping Ass'n, 471 F.3d 229, 240-41 (1st Cir. 2006); Recupero v. New Eng. Tel. & Tel. Co., 118 F.3d 820, 840 (1st Cir. 1997).

In the case at hand, BCBS's May 25 letter apprised Stephanie, clearly and concisely, of the reason why BCBS was denying payment for some of Gateway's services: "your child's clinical condition does not meet the medical necessity criteria required for an acute residential psychiatric stay in the area of symptoms/behaviors." Even in the absence of a discussion directly engaging with the Plan's medical necessity criteria, Stephanie received a sufficiently definite explanation of the reason for the

denial. See, e.g., Cooper v. Hewlett-Packard Co., 592 F.3d 645, 652-54 (5th Cir. 2009); Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 526 (1st Cir. 2005); see also Juliano v. Health Maint. Org. of N.J., Inc., 221 F.3d 279, 287 (2d Cir. 2000) ("The purpose of [the 'full and fair review'] requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts." (alteration in original) (quoting DuMond v. Centex Corp., 172 F.3d 618, 622 (8th Cir. 1999))). Though the claims administrator must give particular reasons for the denial of benefits, see 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503-1(g)(1)(i), it need not spell out "the interpretive process that generated the reason for the denial," Gallo v. Amoco Corp., 102 F.3d 918, 922 (7th Cir. 1996).

BCBS's letter ended with an outline of the relevant internal appeal procedures and, thus, substantially complied with that aspect of the ERISA notice requirements. See Niebauer, 783 F.3d at 927; Terry v. Bayer Corp., 145 F.3d 28, 39 (1st Cir. 1998). The record makes manifest that Stephanie developed an effective claim and was able to navigate BCBS's internal review process.

Stephanie's next procedural claim is likewise unavailing. When Stephanie pursued her internal appeal, she requested that BCBS furnish her with M.G.'s claim-related medical records. BCBS complied in a timely manner. Stephanie had an ample opportunity, after receiving those records, to supply comments and

- 10 -

supporting materials in conjunction with her internal appeal. She perfected that appeal by means of a grievance letter attaching well over 465 pages of supporting documents.

By letter dated June 19, 2013, BCBS reiterated its partial denial of benefits. Although Stephanie contends that BCBS's denial failed to take into account the supporting materials that she had submitted (particularly those that came from M.G.'s psychotherapists), that is sheer speculation. The mere act of upholding a denial of benefits cannot mechanically be equated with overlooking medical evidence that tends to support a different outcome. See Terry, 145 F.3d at 39. Nor was BCBS obliged to accept unquestioningly the pronouncements of M.G.'s psychotherapists: "[n]othing in [ERISA] suggests that plan administrators must accord special deference to the opinions of treating physicians." Black & Decker Disab. Plan v. Nord, 538 U.S. 822, 831 (2003).

Relatedly, Stephanie complains that BCBS did not directly answer all of her questions. But even though a plan participant is entitled to have the claims administrator engage in a meaningful dialogue and clearly communicate the reasons for its actions, ERISA creates no obligation for claims administrators to respond exhaustively to each and every list of questions a participant propounds.

In sum, Stephanie received the full and fair internal review that 29 U.S.C. § 1133 prescribes. Throughout, BCBS engaged in a sufficiently meaningful dialogue with Stephanie about her claim. It assessed her original claim with the help of an independent psychiatrist-reviewer and engaged a second independent psychiatrist-reviewer to ensure adequate consideration of the additional materials that Stephanie submitted on appeal.

If more were needed — and we do not think that it is — Stephanie has failed to show prejudice attributable to any purported procedural irregularity. This failure, in and of itself, is fatal to her procedural claims. See Niebauer, 783 F.3d at 927.

That ends this aspect of the matter. For the reasons elucidated above, we hold that Stephanie's procedural violation claims lack force.

## B. **The Merits.**

This brings us to the merits: Stephanie's claim that the district court erred in upholding BCBS's partial denial of benefits. Stephanie's initial gambit is that the district court employed the wrong standard of review. We begin — and end — there.

We must assay the Plan "in order to determine the standard of judicial review applicable to a claims administrator's denial of benefits." McDonough v. Aetna Life Ins. Co., 783 F.3d 374, 379 (1st Cir. 2015). The default rule favors de novo review: a challenge to a denial of benefits is to be reviewed de novo

- 12 -

"unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Moreover, such authority must be expressly provided for, see Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 584 (1st Cir. 1993), and notice of that reservation must appropriately be given to Plan participants, see Gross v. Sun Life Assur. Co., 734 F.3d 1, 14 (1st Cir. 2013) ("[T]he critical question is whether the plan gives the employee adequate notice that the plan administrator is to make a judgment within the confines of pre-set standards, or if it has the latitude to shape the application, interpretation, and content of the rules in each case." (quoting Diaz v. Prudential Ins. Co., 424 F.3d 635, 639-40 (7th Cir. 2005))). Where the delegation of discretionary authority is sufficiently clear and notice of it has been appropriately provided, the claims administrator's decision will be upheld unless it is arbitrary, capricious, or an abuse of discretion. See Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesth. Assocs. LTD Plan, 705 F.3d 58, 61 (1st Cir. 2013).

The court below concluded that the Plan contained an adequate grant of discretionary decisionmaking authority and, therefore, its review of the claims administrator's decision to deny benefits should be for abuse of discretion. The court offered

twin rationales in support of its conclusion.  First, it held that the Certificate alone contained a sufficiently clear grant of discretionary authority to BCBS.  See Stephanie C., 2015 WL 1443012, at *7 (quoting the Certificate).  Second, the court posited that the Certificate could be read in combination with the PAA, which admittedly provides an unambiguous grant of discretionary authority to the claims administrator.  See id. (quoting the PAA).

Stephanie disputes both branches of this reasoning.  She argues that the language of the Certificate is insufficiently distinct to comprise a clear grant of discretionary authority. She further argues that the PAA was never disclosed when coverage attached and that, therefore, it cannot be used to clarify the less-than-pellucid grant of authority contained in the Certificate.

The district court's determination of the applicable standard of review is a matter of law and, thus, engenders de novo review.  See United States v. Howard (In re Extrad. of Howard), 996 F.2d 1320, 1327 (1st Cir. 1993).  The key question is whether the Plan "reflect[s] a clear grant of discretionary authority to determine eligibility for benefits."  Leahy v. Raytheon Co., 315 F.3d 11, 15 (1st Cir. 2002).  In answering that question, "we review the language of the Plan de novo, just as we would review

- 14 -

the language of any contract." Ramsey v. Hercules Inc., 77 F.3d 199, 205 (7th Cir. 1996).

The principal language to which both BCBS and the district court advert in support of their shared conclusion that the Plan confers a clear grant of discretionary decisionmaking authority is contained in the Certificate. In this respect, the Certificate states that BCBS "decides which health care services and supplies that you receive (or you are planning to receive) are medically necessary and appropriate for coverage." The power to decide, they say, necessarily implies the existence of discretion.

In our view, the quoted language simply cannot carry the weight that BCBS and the district court load upon it. That language merely restates the obvious: that no benefits will be paid if BCBS determines they are not due. See Diaz, 424 F.3d at 637-38 (noting that "[a]ll plans require an administrator first to determine whether a participant is entitled to benefits before paying them").

Clarity of language is crucial to accomplishing a grant of discretionary authority under an ERISA plan, and the Certificate lacks that degree of clarity. Under our case law, the "BCBS decides" language falls well short of what is needed for a clear grant of discretionary authority. See Gross, 734 F.3d at 15-16; see also Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000). Put bluntly, the quoted language is not sufficiently

clear to give notice to either a plan participant or covered beneficiary that the claims administrator enjoys discretion in interpreting and applying plan provisions.

To be sure, "no precise words [in the Plan] are required" to grant discretionary decisionmaking authority. Gross, 734 F.3d at 15-16. But in this regard, the Plan "must offer more than subtle inferences." Id. at 16. Here, the inference of discretion is subtle at best: it is merely one of two equally plausible inferences that a reader might draw from the "BCBS decides" language.

The short of it is that a grant of discretionary decisionmaking authority in an ERISA plan must be couched in terms that unambiguously indicate that the claims administrator has discretion to construe the terms of the plan and determine whether benefits are due in particular instances. See id. at 15-16; Feibusch v. Integrated Device Tech., Inc. Emp. Benefit Plan, 463 F.3d 880, 884 (9th Cir. 2006); Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252 (2d Cir. 1999). The phraseology that BCBS chose to use in the Certificate to describe its decisionmaking authority is capable of supporting reasonable differences of opinion as to the nature and extent of the authority reserved to BCBS. A fortiori, that phraseology is insufficiently distinct to constitute a clear grant of discretionary decisionmaking authority. See Gross, 734 F.3d at 13-15 (holding

- 16 -

formulation "[p]roof [of claim] must be satisfactory to [claims administrator]" insufficient to confer discretionary authority); Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1254-56 (3d Cir. 1993) (holding formulation that claims administrator "will evaluate the proposed admission for certification of medical necessity" similarly insufficient).

Contrary to BCBS's importunings, the PAA is not available to cure the ambiguity contained in the Certificate. There is simply no evidence that the PAA was ever disclosed either to Stephanie or to M.G.'s father when coverage attached.[3] Any terms that concern the relationship between the claims administrator and the beneficiaries cannot be held against the beneficiaries where, as here, the terms appear in a financing arrangement between the employer and the claims administrator that was never seasonably disseminated to the beneficiaries against whom enforcement is sought. See Fritcher v. Health Care Serv. Corp., 301 F.3d 811, 817 (7th Cir. 2002). Consequently, the PAA

---

[3] In its brief, BCBS suggests that Stephanie should have been on notice of the PAA because of references to the PAA contained in the Certificate. But that suggestion is a non-sequitur: Stephanie had no obligation to go in search of undelivered documents in order to ascertain whether BCBS had reserved for itself discretionary decisionmaking authority. See Helwig v. Kelsey-Hayes Co., 93 F.3d 243, 249 (6th Cir. 1996) (explaining that the critical consideration "is the language actually given to the employees and upon which they could reasonably have relied").

cannot be used against Stephanie to bring clarity to an ambiguously worded grant of decisionmaking authority.[4]  See Alday v. Container Corp. of Am., 906 F.2d 660, 665-66 (11th Cir. 1990).

That ends this aspect of the matter.  We hold that the Certificate is ambiguous as to whether or not the Plan confers discretionary decisionmaking authority upon BCBS.  We further hold that, in the circumstances of this case, the undelivered PAA cannot be employed to resolve this ambiguity.  Thus, the default rule applies.  See Firestone, 489 U.S. at 115.  Under that rule, the claims administrator's decision should have engendered de novo review.  See id.  Because the district court looked at BCBS's partial denial of benefits through the wrong standard-of-review lens, we must vacate that portion of its judgment and remand for reconsideration.

---

[4] With narrow exceptions not relevant here, see, e.g., Senior Exec. Benefit Plan Participants v. New Valley Corp. (In re New Valley Corp.), 89 F.3d 143, 149-50 (3d Cir. 1996) (allowing use of bargaining history and conduct of parties to shed light on meaning of plan terms), the practice is to look within plan documents to clarify infirmities in plan language.  See Bland v. Fiatallis N. Am., Inc., 401 F.3d 779, 784-86 (7th Cir. 2005); Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1312-14, 1316-17 (3d Cir. 1991); Alday v. Container Corp. of Am., 906 F.2d 660, 665-66 (11th Cir. 1990).  This appeal, however, does not require us to decide whether the PAA is a plan document.  Nor does it require us to decide whether due notice of a reservation of discretionary decisionmaking authority can be effected only through the Plan itself.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we <u>affirm</u> the judgment of the district court in part, <u>vacate</u> that judgment in part, and <u>remand</u> for further proceedings consistent with this opinion. No costs.

**<u>So Ordered.</u>**