# United States Court of Appeals
## For the First Circuit

No. 15-2413

NILDA RODRÍGUEZ-LÓPEZ,

Plaintiff, Appellant,

v.

TRIPLE-S VIDA, INC.,

Defendant, Appellee.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGiverin, U.S. Magistrate Judge]


Before

Torruella, Thompson, and Kayatta,
Circuit Judges.


Víctor Gratacós-Díaz, with whom Gratacós Law Firm, PSC was on brief, for appellant.
Diana Pérez-Seda, with whom César T. Alcover and Casellas Alcover & Burgos, PSC were on brief, for appellee.


March 1, 2017

**TORRUELLA**, **Circuit Judge**.   Plaintiff-appellant Nilda Rodríguez-López ("Rodríguez") appeals from the district court's grant of summary judgment in favor of defendant-appellee Triple-S Vida, Inc. ("Triple-S").   The district court reviewed and sustained Triple-S's denial of Rodríguez's claim for long-term disability ("LTD") benefits under the deferential arbitrary and capricious standard.   Because the plan contained no clear delegation of authority to Triple-S, we hold that Triple-S's decision was not entitled to deference.   Accordingly, we reverse and remand to the district court to decide the case under the de novo standard of review.

## I. Factual Background

The following facts have been drawn largely from the district court's opinion in this case.

### A. Rodríguez's History

Rodríguez, a licensed chemist, worked as a senior chemist/quality control laboratory supervisor for Mova Pharmaceutical Corporation ("Mova") from 1995 to 2004.   Her job required her to perform some physical activity, such as standing, walking, bending, reaching, lifting, carrying, and writing.

Rodríguez first started to experience symptoms on March 12, 2004 -- which was also her last day of work -- and was then diagnosed with several physical and mental conditions.   She

was prescribed medications to mitigate some of the symptoms. She subsequently underwent a series of medical exams and began treatment with Dr. Héctor J. Cases, a neurologist, in June 2004. Dr. Cases filled out a "Functional Capacity Estimate" form on November 29, 2004, where he concluded that she could not work full-time or part-time, even if her employer accommodated her limitations and restrictions. Accordingly, Rodríguez filed a claim for disability benefits under Mova's LTD plan.

**B. Plan Provisions**

Mova's LTD plan is an employee welfare benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Jefferson-Pilot Life Insurance Company ("Jefferson-Pilot") originally issued a group policy (the "Plan") to Mova. The summary plan description ("SPD") named Mova as the Plan sponsor and administrator, and stated that "[t]he Plan Sponsor is granted the discretionary authority to determine eligibility for benefits and to construe the terms of the Plan."

Under the Plan, the forms to claim benefits and proof of loss for a disability were to be submitted to Jefferson-Pilot. Jefferson-Pilot had the right, at its own expense, to examine the claimant, when and as often as was reasonably required while the claim was pending. If the claim was wholly or partially denied,

Jefferson-Pilot would furnish a written notice that stated the specific reasons for the denial and the basis in the Plan provisions, explain the Plan's claim review procedures, and describe any additional material or information needed to reconsider the decision. Also, an officer designated by Jefferson-Pilot would review requests for review of a claim, and Jefferson-Pilot would furnish a written decision.

Triple-S claims that at some point it replaced Jefferson-Pilot in the contractual relationship between Mova and Jefferson-Pilot and that it notified Mova that Triple-S would pay the benefits provided under the Plan, subject to all the policy's provisions. Thereafter, all the things that the Plan stated would be performed by Jefferson-Pilot were actually performed by Triple-S. The Plan, however, was not amended to reflect this change. Nor was a new SPD or summary of material modifications furnished to plan participants notifying them of this change and naming Triple-S as claims administrator and/or insurer.

The Plan offered LTD benefits due to total disability. To qualify for these benefits, the beneficiary had to comply with the Plan's definition of "total disability" or "totally disabled" and be under a doctor's care during the entire time of the total disability. "'Total disability' . . . means . . . that you are unable to perform all of the material and substantial duties of

-4-

your occupation on a full-time basis because of disability: (1) caused by injury or sickness; and (2) that started while you are insured."  A beneficiary is "totally disabled" if she is "unable to perform with reasonable continuity all of the material and substantial duties of [her] own or any other occupation for which [she is] or become[s] reasonably fitted by training, education, experience, age[,] and physical and mental capacity." Benefits would be paid when the beneficiary is totally disabled for longer than the applicable Elimination Period until the earliest of: (1) the day the total disability ends, (2) death, or (3) the end of the maximum payment period.  For mental illness, however, the plan limited payment of benefits to twenty-four months.[1]

## C. Rodríguez's Claim for LTD Benefits

Triple-S received Rodríguez's application for LTD benefits on January 13, 2005.[2]  She claimed to be experiencing various symptoms which rendered her unable to work.  She stated that she did not anticipate working in the near future, either in her previous occupation or in any other occupation, and was not

---

[1]  Benefits for mental illness could be extended longer than twenty-four months under certain conditions not present here.

[2]  The claim was dated December 9, 2004.

interested in getting training or in working in another type of occupation or work activity.

Rodríguez's claim was initially denied, but it was later approved on administrative appeal once Rodríguez supplemented her record with additional evidence. Her LTD benefits were granted on October 10, 2005, under the mental illness disability provision of the Plan, but it was effective retroactively to September 24, 2004. Since the Plan provided that disability benefits due to mental illness could be granted for a maximum term of twenty-four months, Rodríguez's mental-illness benefits expired September 24, 2006. Rodríguez was not awarded LTD benefits for her physical ailments, but she was notified that her physical condition would be further investigated.

From 2007 to 2012, Rodríguez was notified on various occasions that her claim for LTD benefits for physical disability was being evaluated, as the Plan's twenty-four-month term for mental illness had expired. During this time period, Triple-S continued issuing the same monthly disability payments Rodríguez had been receiving for her mental illness. On December 16, 2009, the Social Security Administration found Rodríguez to be disabled, retroactive to March 12, 2004. Rodríguez submitted evidence of her Social Security claim to Triple-S. Since Social Security benefits were to be deducted from the amount payable for disability

under the Plan, Triple-S requested a refund of all excess LTD benefits.

Rodríguez also submitted updated copies of progress notes from her treating physicians, including her rheumatologist and endocrinologist, which stated that she was unable to perform a gainful job since her disability was permanent and total. After further medical exams were performed on Rodríguez, her neurologist, Dr. Cases, filled out additional "Functional Capacity Estimate" forms on February 9, 2009, and January 18, 2013, where he stated that Rodríguez was not able to work full-time or part-time. He certified that Rodríguez was completely disabled, that she had reached the maximum medical improvement, and that she was not fit to return to work, despite any work accommodations available for her limitations and restrictions. Rodríguez also filled out and submitted various Triple-S resource questionnaires, in which she stated her symptoms and claimed to be unable to work because her conditions were permanent.

Triple-S referred Rodríguez's case to Dr. Alfonso Bello, a rheumatologist, for an Independent Medical Review of her medical file. After reviewing the medical file provided to him, Dr. Bello concluded that, from a rheumatologic perspective, Rodríguez's medical record did not support a finding that she suffered from an

active and disabling disorder, and, hence, she was not totally disabled.

Triple-S also referred the case to a Vocational Specialist for an Employability Evaluation from a physical standpoint. The Vocational Specialist found that there were 162 sedentary and light duty occupations, including her previous job, available in the San Juan, Caguas, and Guaynabo metropolitan area, which Rodríguez could perform given her education, training, and previous work experience, and that met or exceeded her reasonable wage of $12.62 per hour. Some of these jobs are similar to the work she performed at Mova, including technical and supervisory duties in laboratories.

## D. Denial of Claim and Administrative Appeal

On July 23, 2013, Triple-S denied Rodríguez's application for LTD benefits, finding she no longer met the Plan's definition of disabled. According to Triple-S, her administrative record did not contain enough clinical evidence to support a finding that she was unable to physically perform the tasks of her previous job or any other occupation. Triple-S also terminated her mental illness disability benefits, as the benefits had been paid beyond the twenty-four-month limit allowed by the Plan. It did not request reimbursement for the excess benefits paid.

In accordance with the Plan's internal appeal process, on August 23, 2013, Rodríguez administratively appealed Triple-S's decision and submitted new evidence, copies of her medical files, and Social Security documents. Rodríguez underwent additional medical exams that suggested deterioration of an injury when compared to the same study conducted in 2004.

Triple-S referred the case to Dr. Inocencio A. Cuesta, an internist with a sub-specialty in adult rheumatology, who performed an independent peer review on October 11, 2013. Dr. Cuesta noted that, although the record sustained subjective evidence of pain and evidence of a rheumatologic condition, there was no objective evidence that indicated these findings impaired Rodríguez. He opined that the record contained no clinical information as to how her physical ailments affected her ability to return to work and concluded that Rodríguez did not suffer from physical deterioration based on a rheumatoid condition that would prevent her from working full-time in a light or sedentary occupation.

Another employability evaluation was conducted, taking into account only her physical condition. The occupational specialist concluded that there were jobs that Rodríguez could perform given her education and experience that might not require

additional training, modification, or restructuring, and that would meet or exceed her reasonable wage of $12.62 per hour.

On December 3, 2013, Triple-S notified Rodríguez that it was denying benefits because the medical record did not support a finding that she suffered from a physical condition that prevented her from performing light or sedentary occupations, and that disability benefits under the mental illness provision of the LTD plan had already been exhausted, even if she continued to be disabled due to a mental health condition. She was also advised of her right to sue under § 502(a) of ERISA since she had already exhausted the administrative remedies.

## E. Procedural Background

On May 21, 2014, Rodríguez filed suit in a Puerto Rico state court. Triple-S removed the action to the federal district court. The parties cross-moved for summary judgment. On September 30, 2015, the district court granted Triple-S's motion and denied Rodríguez's cross-motion. In granting Triple-S's motion, the district court found that

> [u]pon review of the group policy, administrative documents, and related correspondence between Rodríguez, her treating physician, her legal representatives, and Triple-S, it is clear that Triple-S had discretionary authority to determine benefits eligibility. Under 29 U.S.C. § 1002(21) (A)(iii), although Mova was designated as plan administrator of the employee benefit plan, Triple-S was plan fiduciary with administrative authority to

interpret the terms of the plan and determine eligibility for and entitlement to plan benefits.

Rodríguez-López v. Triple-S Vida, Inc., No. 14-1498, 2015 WL 5792621 at *3 (D.P.R. Sept. 30, 2015). It therefore applied the arbitrary and capricious standard of review. Under this deferential standard, the district court concluded that, in light of the medical evidence in the administrative record, Triple-S's denial of LTD benefits for physical illness was reasonable and based on substantial evidence and, consequently, was neither arbitrary nor capricious.

On appeal, Rodríguez contends that the district court employed an incorrect standard of review and that the denial of LTD benefits was insupportable under the more stringent de novo standard.

## II. Discussion

### A. Applicable Law

The question of what standard of review is applicable to a benefits decision governed by ERISA is a question of law that this Court reviews de novo. Maher v. Mass. Gen. Hosp. Long Term Disability Plan, 665 F.3d 289, 291 (1st Cir. 2011) (citing Smart v. Gillette Co. Long–Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995)).

"[T]he rights and responsibilities of parties in relation to employee pension and welfare plans" are regulated by

-11-

ERISA. Terry v. Bayer Corp., 145 F.3d 28, 34 (1st Cir. 1998). ERISA provides a cause of action for plan participants, and other beneficiaries, to recover benefits due to them under the terms of the Plan. See 29 U.S.C. § 1132(a)(1)(B). "It is under this statutory provision that claims, such as this one, challenging denials and termination of employer-sponsored disability benefits are brought." Terry, 145 F.3d at 34.

ERISA does not establish the standard of review which courts should apply when reviewing determinations made regarding benefits claims. However, the Supreme Court has held that a denial of benefits challenged "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 813 F.3d 420, 427 (1st Cir. 2016) ("The default rule favors de novo review . . . ."). If the plan gives the plan participant or covered beneficiary adequate notice of such reservation, then "a deferential arbitrary and capricious or abuse of discretion standard" is applied. Gross v. Sun Life Assur. Co. of Can., 734 F.3d 1, 11 (1st Cir. 2013) (internal quotation marks omitted) (quoting Maher, 665 F.3d at 291); see also id. at 14; Stephanie C., 813 F.3d at 427 (noting

-12-

that discretionary authority "must be expressly provided for, and notice of that reservation must appropriately be given to Plan participants" for the deferential standard to apply) (internal citations omitted). "[T]he threshold question in determining the standard of review is whether the provisions of the benefit plan at issue 'reflect a <u>clear</u> grant of discretionary authority to determine eligibility for benefits.'" <u>Gross</u>, 734 F.3d at 13 (quoting <u>Leahy</u> v. <u>Raytheon Co.</u>, 315 F.3d 11, 15 (1st Cir. 2002)). Although "[t]here are no required 'magic words,'" <u>id.</u> (quoting <u>Brigham</u> v. <u>Sun Life of Can.</u>, 317 F.3d 72, 81 (1st Cir. 2003)), "to secure discretionary review, a plan administrator must offer more than subtle inferences drawn from . . . unrevealing language," <u>id.</u> at 16.

**B. Analysis**

The parties disagree on the standard of review that the district court should have applied in reviewing Triple-S's denial of Rodríguez's claim for benefits. Rodríguez alleges that the Plan did not reflect a clear grant of authority to Triple-S to make eligibility determinations under the Plan because such authority was explicitly delegated to Mova. She alleges that if, as the district court found, this discretionary authority was at some later time transferred to Triple-S, this would have constituted a "contractual violation," since the Plan required an

-13-

amendment to change its provisions and no amendment was "found in [Triple-S's] administrative record." Thus, her argument goes, because it is not clear that Triple-S has been granted discretionary authority under the Plan, its determination to deny her LTD benefits was subject to the de novo standard of review. Accordingly, she requests that the case be remanded to the district court so that Triple-S's determination be reviewed under the de novo standard.

In assessing whether a plan reflects a clear grant of discretionary authority,[3] "we review the language of the Plan de novo, just as we would review the language of any contract." Stephanie C., 813 F.3d at 428 (quoting Ramsey v. Hercules Inc., 77 F.3d 199, 205 (7th Cir. 1996)). A careful review of the language of the Plan leads us to conclude that it does not reflect a clear grant of discretionary authority to Triple-S to determine eligibility for benefits.

---

[3] Triple-S alleges that we need not analyze this because, by arguing in the district court that Triple-S abused its discretion in denying her claim for benefits, Rodríguez waived any argument that the applicable standard of review should have been de novo. Although Triple-S acknowledges that Rodríguez also argued in her motion for summary judgment that Mova was the plan administrator and that Triple-S had no authority to make eligibility determinations, Triple-S claims that this argument "was not tied to a rejection of the abuse of discretion standard." We note that the district court found Rodríguez had sufficiently preserved her standard of review argument, and we find so as well.

Triple-S has not been able to point to any Plan language specifically establishing that it (Triple-S) had discretionary decisionmaking authority. Rather, it argues that the Plan grants this authority to Mova but, because Triple-S was actually making the benefit decisions in place of Mova, it is implied that the discretionary authority has been transferred to Triple-S. Case law, however, requires that the delegation of discretionary authority to an administrator or fiduciary be clearly stated in the plan. See id. at 428 (finding language in plan certificate "not sufficiently clear to give notice to either a plan participant or covered beneficiary that the claims administrator enjoys discretion in interpreting and applying plan provisions"); Gross, 634 F.3d at 14 ("[T]he critical question is whether the plan gives the employee adequate notice that the plan administrator . . . has the latitude to shape the application, interpretation, and content of the rules in each case." (quoting Díaz v. Prudential Ins. Co. of Am., 424 F.3d 635, 637 (7th Cir. 2005)). The Plan fails to meet this degree of clarity since it states that Mova, not Triple-S, had this authority. If Triple-S wanted to benefit from the delegation of authority and the deferential standard it provides, the Plan needed to clearly state it[4] so that Plan participants,

---

[4] Because here a notice of a reservation of discretionary decisionmaking authority as to Triple-S was not made in any way or in any document, we need not decide whether it can be effected

-15-

such as Rodríguez, received adequate notice that Triple-S had been granted discretionary authority to interpret the Plan. There is no evidence in the record that this was done. See Stephanie C., 813 F.3d at 429, n.3 (finding that ambiguity as to whether the claims administrator had discretionary authority could not be cured by document defining relationship between the employer and the claims administrator because there was no evidence that the document was ever disclosed to plan participants, and noting that plan participant "had no obligation to go in search of undelivered documents in order to ascertain whether [the claims administrator] had reserved for itself discretionary decisionmaking authority"); see also Maher, 665 F.3d at 291 ("absent a proper delegation, the . . . Plan could not rely on [grant of discretionary authority to plan sponsor] to defend a denial by an independent entity"); Terry, 145 F.3d at 37 (finding plan sponsor effectively delegated discretionary authority to Benefit Committee following plan-outlined procedure, and so Committee's decision subject to abuse-of-discretion review).

Triple-S also argues that its delegation of discretionary authority is "clear" because the Plan "undoubtedly

_____

only through the Plan itself. See Stephanie C., 813 F.3d at 429 n.4.; Maher, 665 F.3d at 301 (Lipez, J., dissenting) (citing Ringwald v. Prudential Ins. Co., 609 F.3d 946, 948-49 (8th Cir. 2010), which disregarded grant of discretionary authority that appeared only in the SPD).

establishes that Triple-S Vida's role is to grant and deny benefits both after an initial review and after an administrative appeal and contains detailed specifications as to how Triple-S Vida will make [these] determinations." Contrary to Triple-S's assertions, the Plan establishes that Jefferson-Pilot, and not Triple-S, has the role to grant or deny benefits. Although Triple-S claims that it is Jefferson-Pilot's successor, the Plan was not amended to reflect this change. Nevertheless, we need not determine what consequence, if any, this failure to amend may have because even if we were to read "Triple-S" into the Plan where "Jefferson-Pilot" appears, the Jefferson-Pilot provisions only give Jefferson-Pilot the power to determine whether or not "benefits . . . are due." The power to decide does not necessarily imply the existence of discretion. See Stephanie C., 813 F.3d at 428; Díaz, 424 F.3d at 637 (noting that because "[a]ll plans require an administrator first to determine [eligibility for benefits] before paying them[,] . . . the fact that an administrator is deciding on a case-by-case basis who is entitled to benefits does not reveal whether a plan does or does not reserve 'discretion' to the administrator"). Here the Jefferson-Pilot provisions grant the power to decide, but no more -- the provisions do not grant discretionary authority. See Stephanie C., 813 F.3d at 428 (finding that "[plan administrator] decides which health care

services . . . are medically necessary" clause did not grant discretionary authority and "merely restates the obvious: that no benefits will be paid if [the administrator] determines they are not due"); Gross, 734 F.3d at 12-15 (holding formulation "[p]roof [of claim] must be satisfactory to [claims administrator]" insufficient to confer discretionary authority) (second alteration in the original); Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1254-56 (3d Cir. 1993) (holding formulation that claims administrator "will evaluate the proposed admission for certification of medical necessity and appropriateness under the terms of the [policy]" similarly insufficient).

Finally, Triple-S argues that it has been granted discretionary authority because the Plan recognizes the existence of plan fiduciaries and it is a Plan "fiduciary with administrative authority to interpret the terms of the plan and determine eligibility for and entitlement to plan benefits." Rodríguez-López, 2015 WL 5792621 at *3. This, it argues, is evidenced by several provisions of the policy that vest Triple-S with authority to examine the claimant as often as reasonably required; furnish notices of denial of benefits, specifying the reasons for the denial, informing of review procedures and describing additional materials that could be submitted for review; and appoint an

administrative review officer to make final determinations as to eligibility.  Its argument fails.

Named fiduciaries may be granted discretionary decisionmaking authority.  See 29 U.S.C. § 1105(c)(1); Rodríguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 584 (1st Cir. 1993).  In such a case, however, the Plan's language must clearly grant this authority.  See Stephanie C, 813 F.3d at 428; Rodríguez-Abreu, 986 F.2d at 583-84.  ERISA also "allows named fiduciaries to delegate responsibilities (other than trustee responsibilities) through express procedures provided in the plan."  Rodríguez-Abreu, 986 F.2d at 584 (citing 29 U.S.C. § 1105(c)(1)).  For the delegation of discretionary authority to be effective so that the deferential standard of review applies, however, the delegation must be clear and the fiduciary must properly designate a delegate for the fiduciary's discretionary authority.  Id. (citing Madden v. ITT Long Term Disability Plan, 914 F.2d 1279, 1283-84 (9th Cir. 1990)).

In support of its assertions, Triple-S cites to language from a section of the SPD titled "Statement of ERISA Rights," which states that,

> In addition to creating rights for plan participants, ERISA imposes obligations upon the people who are responsible for the operation of the plan.  The people who operate your plan[,] called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of all plan participants and beneficiaries.

-19-

This language, however, cannot be afforded the effect that Triple-S attributes to it. It does not grant discretionary authority to named fiduciaries, does not include Triple-S as a named fiduciary under the Plan, and does not properly designate Triple-S as a delegate for a fiduciary with discretionary authority. All this language does is state that those who operate the Plan -- plan fiduciaries -- have obligations under ERISA. The inclusion of this statement in the SPD is even required by ERISA regulations. See 29 C.F.R. 2520.102-3(t)(1) (stating that SPDs must include "[t]he statement of ERISA rights described in section 104(c) of the Act, containing the items of information applicable to the plan included in the model statement of paragraph (t)(2) of this section," which in turn includes the paragraph referenced by Triple-S under the header "Prudent Actions by Plan Fiduciaries"). Thus, if this were enough to confer discretionary authority, decisions under all regulations-compliant plans would be subject to the deferential standard of review.

Finally, Triple-S posits that Rodríguez always "dealt directly with Triple-S by filing all forms and pursuing all available administrative review proceedings before it," which supports a finding that Triple-S, and not Mova, had the authority to make eligibility determinations. But these facts do not mean that Triple-S was "clearly" delegated with discretionary

authority.  As we have noted, it just means that Triple-S had the power to decide, but power to decide does not amount to the existence of discretion.  See Stephanie C., 813 F.3d at 428; Rodríguez-Abreu, 986 F.2d at 584 (fact that plan administrator denied benefits claim did not cure failure to delegate discretionary authority, so denial reviewed de novo).

We hold that the Plan does not confer discretionary authority upon Triple-S.  Thus, de novo review applies.  Because the district court looked at Triple-S's denial of benefits through the wrong standard-of-review lens, we must vacate its judgment and remand for reconsideration.

### III. Conclusion

For the reasons stated above, we vacate the judgment and remand for further proceedings consistent with this opinion.[5]  No costs are awarded.

**Vacated and Remanded.**

---

[5]  This may be an appropriate time for the parties to seriously consider settlement.