# United States Court of Appeals

## For the First Circuit

---

No. 19-1879

JANE DOE,

Plaintiff, Appellant,

v.

HARVARD PILGRIM HEALTH CARE, INC.; THE HARVARD PILGRIM PPO PLAN
MASSACHUSETTS, GROUP POLICY NUMBER 0588660000,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

---

Before

Torruella, Selya, and Kayatta,
Circuit Judges.

---

Mala M. Rafik, with whom Sarah E. Burns and Rosenfeld & Rafik,
P.C. were on brief, for appellant.
Steven L. Schreckinger, with whom Jane M. Guevremont and
Anderson & Kreiger LLP were on brief, for appellees.

---

September 9, 2020

---

**KAYATTA, Circuit Judge.** Jane Doe spent several months of 2013 at a residential mental health treatment center, interrupted by several days in an inpatient hospital in June of that year. The Defendants ("Harvard Pilgrim") agreed to cover the costs of Doe's treatment at the residential facility, the Austen Riggs Center ("Riggs") in Massachusetts, for her first few weeks there, as well as the months after her stint in an inpatient unit. However, Harvard Pilgrim denied coverage for the time period from February 13, 2013, through June 18, 2013, asserting that Doe could have stepped down to a lower level of treatment during those months. Doe sued Harvard Pilgrim in the District of Massachusetts seeking de novo review of her claim for coverage of that time period under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. Following an earlier appeal, the district court entered judgment for Harvard Pilgrim on remand. Doe now appeals both that judgement and the district court's refusal to award Doe attorneys' fees for her success on the prior appeal. For the following reasons, we affirm the district court's rulings.

**I.**

Our previous opinion in this case reviewed in detail the events giving rise to this litigation. See Doe v. Harvard Pilgrim Health Care, Inc., 904 F.3d 1, 2–6 (1st Cir. 2018) (Doe I). For the purposes of this appeal, we set out a short summary of the

relevant facts here: Doe began experiencing serious symptoms of psychological illness during her first year of college in 2012 and was hospitalized twice over the course of a few months. On January 17, 2013, Doe was admitted to Riggs. Harvard Pilgrim approved initial coverage of her treatment there for seven days. Harvard Pilgrim eventually extended Doe's coverage through February 5, but on that date sent Doe a letter stating that her treatment at Riggs would not be covered as of February 6. Doe initiated an expedited internal review of the decision, which Harvard Pilgrim denied on February 12, 2013, based on a report by Dr. Michael Bennett. Harvard Pilgrim accepted coverage through February 12, and otherwise stood by its denial. Subsequently, on March 12, 2013, an anonymous, independent expert retained by the Massachusetts Office of Patient Protection ("OPP") also upheld Harvard Pilgrim's denial of coverage for a continued stay at Riggs, albeit beginning as of February 13, not February 6.

During the course of these reviews, Doe remained at Riggs for treatment. On June 18, however, Doe was transferred from Riggs to inpatient treatment at Berkshire Medical Center. She was then readmitted to Riggs from Berkshire Medical Center on June 24. Although Harvard Pilgrim initially denied coverage for Doe's second admission to Riggs (beginning on June 24, 2013), it reversed that decision after an internal review by Dr. Edward Darell

concluded that the second admission was medically necessary. Doe was finally released from Riggs on August 7, 2013.

Doe filed this case against Harvard Pilgrim in March 2015. Harvard Pilgrim's Medical Director, Dr. Joel Rubenstein, conducted another review in September 2015 and concluded that Harvard Pilgrim had properly denied coverage. Harvard Pilgrim then agreed to reconsider that decision. Doe I, 904 F.3d at 4, 9. That reconsideration generated further information and medical opinions, including two offered by Doe (by Drs. Gregory Harris and Eric Plakun), all of which Harvard Pilgrim reviewed as the parties agreed. Id. at 4. After Harvard Pilgrim reaffirmed its decision denying coverage for the time period at issue, the parties filed cross-motions for summary judgment. Id. at 5. The district court restricted its review to the administrative record as of March 12, 2013, and therefore did not consider records generated or exchanged during Harvard Pilgrim's reconsideration of its denial. See Doe v. Harvard Pilgrim Health Care, Inc., No. 15-10672, 2017 WL 4540961, at *10-11 (D. Mass. Oct. 11, 2017). Ultimately, the district court agreed with Harvard Pilgrim and entered summary judgment dismissing Doe's claim. See id. at *15. On Doe's appeal, we vacated the judgment, ruling that the district court should include in the record and consider the additional material generated as a result of Harvard Pilgrim's agreement to conduct a supplemental review of additional information, as well as other

information produced in the interim (letters from Doe's treating psychologist, Dr. Sharon Krikorian, and documents relating to Doe's second admission, including a report from Dr. Edward Darell). Doe I, 904 F.3d at 4, 6-9, 11. We also clarified that, in the event of a second appeal, we would review the district court's factual findings only for clear error. Id. at 9-11. On remand, the district court again granted summary judgment for Harvard Pilgrim, and Doe now appeals a second time.

**II.**

**A.**

**1.**

As we explained previously, "[i]n the ERISA context, 'the burdens and presumptions normally attendant to summary judgment practice do not apply.'" Doe I, 904 F.3d at 10 (alteration omitted) (quoting Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 813 F.3d 420, 425 n.2 (1st Cir. 2016) (Stephanie C. I)). Instead, a summary judgment motion in a lawsuit contesting the denial of benefits under ERISA "is simply a vehicle for teeing up the case for decision on the administrative record." Id. (citing Doe v. Standard Ins. Co., 852 F.3d 118, 123 n.3 (1st Cir. 2017)). Unless discretionary authority has been granted to the plan administrator, the district court considers the issues de novo and "may weigh the facts, resolve conflicts in evidence, and draw reasonable inferences." Stephanie C. v. Blue

Cross Blue Shield of Mass. HMO Blue, Inc., 852 F.3d 105, 111 (1st Cir. 2017) (Stephanie C. II) (citing Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 518 (1st Cir. 2005)). Thus, "summary judgment in the ERISA context is akin to judgment following a bench trial in the typical civil case." Doe I, 904 F.3d at 10-11. As a result, we review the district court's factual findings for clear error. Id. at 11.

**2.**

Doe's family's plan from Harvard Pilgrim provides coverage only for treatment that is "medically necessary." The plan defines "medically necessary" treatment as:

> Those health care services that are consistent with generally accepted principles of professional medical practice as determined by whether: (a) the service is the most appropriate supply or level of service for the Member's condition, considering the potential benefit and harm to the individual; (b) the service is known to be effective, based on scientific evidence, professional standards and expert opinion, in improving health outcomes; and, (c) for services and interventions that are not widely used, the service for the Member's condition is based on scientific evidence.

To determine medical necessity in the context of mental health treatment, Harvard Pilgrim employs the Optum Level of Care Guidelines from United Behavioral Health ("the Guidelines"). Under the Guidelines, residential treatment is defined as "provid[ing] overnight mental health services to members who do

not require 24-hour nursing care and monitoring offered in an acute inpatient setting but who do require 24-hour structure."  The parties agree that Riggs provides such residential treatment.  In order for such treatment to be medically necessary, the plan member must meet one of the three following criteria:

> 1. The member is experiencing a disturbance in mood, affect or cognition resulting in behavior that cannot be safely managed in a less restrictive setting.  - OR -
>
> 2. There is an imminent risk that severe, multiple and/or complex psychosocial stressors will produce significant enough distress or impairment in psychological, social, occupational/educational, or other important areas of functioning to undermine treatment in a lower level of care.  - OR -
>
> 3. The member has a co-occurring medical disorder or substance use disorder which complicates treatment of the presenting mental health condition to the extent that treatment in a Residential Treatment Center is necessary.

No party argues that Doe met the third criterion; instead, Doe maintains that she qualified for residential treatment under the first two criteria.  The district court -- like Harvard Pilgrim -- found that Doe did not meet either of the first two criteria as of February 13, 2013.[1]

---

[1]  For continued care after initial approval, the Guidelines require -- among other things -- that "[t]he criteria [listed above] for the current level of care continue to be met" and "[t]he member's current symptoms and/or history provide evidence that relapse or a significant deterioration in functioning would be imminent if the member was transitioned to a lower level of care."

Doe's overarching argument on appeal is that the expert reports that formed the basis for Harvard Pilgrim's denials of coverage improperly used an incorrect standard of care, essentially requiring that she need 24-hour nursing care, even though the Guidelines state explicitly that residential treatment should be available "to members who do not require 24-hour nursing care and monitoring offered in an acute inpatient setting but who do require 24-hour structure." Specifically, the OPP reviewer justified his or her decision based on finding "no evidence that the patient required 24 hour supervision or nursing care," and Dr. Rubenstein's report similarly repeatedly references "24 hour care" as the relevant benchmark without mentioning the Guideline's language of "24-hour structure." (The only other expert in the record to conclude that the first admission was not necessary after February 13, 2013, Dr. Bennett, did not reference the Guideline language at all.)

We disagree with Doe: It was not clear error for the district court to rely on these reports despite their references to "24-hour care." To begin, it was hardly error for the experts to cite the lack of any need for round-the-clock care in the first place. The experts would have erred only if they opined that a

Because we uphold the district court's decision that the standard for the current level of care was not met as of February 13, it follows that the criteria for continued care were not met at that point.

- 8 -

need to receive such care was necessary to qualify for the coverage. The district court did not commit clear error in opting not to read the expert reports in that manner. The OPP report in particular based its conclusion on a finding that Doe did not need "24 hour supervision or nursing care" (emphasis added).

More generally, when read in context, the references to 24-hour care can be understood as referring to the availability of such care as provided by Riggs. Thus, even Doe's own expert, Dr. Harris, referred to Doe's repeated accessing of 24-hour nursing care during the night, presumably intending to say only that Doe needed nursing care to be available around the clock, not that she needed care to be actively provided for 24 hours each day. The district court's opinion can then be read to explain that Doe did not require 24-hour "structure" either. For example, the district court considered the length and frequency of Doe's trips away from Riggs (totaling nearly twenty days away) and the ways in which she utilized the services that were available to her there and concluded that all Doe needed was a system in which she could access nursing care each day to arrange a plan for safely managing her symptoms at night if necessary. Although Doe argues that the district court should not have assumed Doe would have that ability at a lower level of care, she has not developed the record on why a partial hospitalization program would have been insufficient.

Doe's further arguments are similarly unavailing given the clear error standard of review. Although Doe argues that the district court should have drawn different inferences from facts including her difficulty with interpersonal relationships inside and outside Riggs, her difficult but perhaps supportive relationship with her family, her ability to ask for and access the services she needed at Riggs, the "casual" tenor of her interactions with nursing staff, and her ability to spend time away from Riggs for recreation and other personal reasons during her admission, we do not believe the district court clearly erred in making the inferences that it did, many of which were supported by the Bennett and Rubenstein reports. Nor do we fault the district court for relying on evidence that Doe's condition had stabilized on medication leading up to the February 13 date. While Doe's condition obviously deteriorated at some point after that, it was not clear error for the district court to conclude that, at least at that point, her continued stay at Riggs was not medically necessary.

Finally, Doe complains that the district court accepted the opinions of Harvard Pilgrim's experts "without weighing their conclusions against the weight of the record." We disagree. The district court clearly reviewed the record as a whole, drawing inferences from both the facts and the expert opinions. We find

no clear error in the fact that the district court implicitly agreed more with Harvard Pilgrim's experts than with Doe's.

**B.**

We turn now to Doe's argument that the district court erred in the manner in which it conducted the proceedings on remand.[2]  The district court treated as comprising the record everything compiled by or submitted to Harvard Pilgrim in the course of making its final coverage decision, as we ordered in Doe I, 904 F.3d at 9.  It then allowed the parties to submit extensive written argument directed to that record.  Finally, it held oral argument and issued a decision.

In so proceeding, the district court did exactly what the law called for.  Judicial review of a benefits denial under 29 U.S.C. § 1132(a)(1)(B) takes the form of a review of "final ERISA

---

[2]  Harvard Pilgrim -- viewing Doe's argument specifically as an argument for a Rule 52 bench trial on the papers -- maintains that Doe has waived the argument, because she neither sought a Rule 52 bench trial explicitly before the appeal to this court in Doe I, nor on remand.  Instead, on remand she moved for an evidentiary hearing with witnesses.  To the extent Doe is requesting a bench trial without additional witness testimony, that argument fails, too.  She has not explained how such a bench trial on the papers would be different from the de novo review the district court conducted.  See Doe I, 904 F.3d at 10-11 (explaining that "summary judgment in the ERISA context is akin to judgment following a bench trial in the typical civil case").  At oral argument, she posited that the district court might have given counsel more opportunity to make their arguments if it had been conducting a Rule 52 bench trial.  But of course a district court always has the option to conduct oral argument on summary judgment motions (as it did here) -- how much time is allotted for that purpose is up to the district court in either situation.

administrative decision." Id. at 6 (quoting Orndorf, 404 F.3d at 519). As such, we presume -- absent some very good reason to do otherwise -- that the record is limited to the record compiled by and submitted to the administrative decisionmaker leading up to and including its final administrative decision. Id. (citing Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003) ("[A]t least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator.")).

Doe offers no good reason for why the district court should not have proceeded in accord with this "strong presumption" against supplementing the administrative record. Liston, 330 F.3d at 23. The case presents no claim that Harvard Pilgrim's process of decision-making was unlawful or that the administrator exhibited a conflict of interest. Nor does Doe claim that materials were improperly omitted from the record on remand, or that the district court did not comply with our decision in defining the record to be reviewed.

Instead, Doe simply argues that she would have preferred that the various experts testify and be subject to cross-examination, as if this were an insurance coverage dispute under state law, rather than judicial review of an administrator's benefit decision under ERISA. That is an argument that we long ago rejected. Orndorf, 404 F.3d at 519 (explaining that judicial

review does not "warrant calling as witnesses those persons whose opinions and diagnosis or expert testimony and reports are in the administrative record").

Doe argues that we should not rely on Orndorf here because Orndorf employed a standard of appellate review that has since been rejected in this Circuit. See Doe I, 904 F.3d at 9-10 (explaining the difference in appellate standards of review used in prior circuit cases). But Orndorf's description of the record to be reviewed by the district court did not hinge on its definition of the standard of review on appeal. Rather, as Doe I explains, we have consistently held that the record before the district court should match the record reviewed by the administrative decisionmaker absent some special circumstance. Id., 904 F.3d at 6 (applying Orndorf and Liston to determine the scope of the record despite our move to a clear error standard of review).

## c.

Finally, Doe appeals the district court's denial of her request for attorneys' fees and costs resulting from the litigation of the case up through our decision in Doe I. ERISA allows a court "in its discretion [to] allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). A court may award fees whenever a party has showed "some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S.

242, 245 (2010) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983)); see Gastronomical Workers Union Loc. 610 & Metro. Hotel Ass'n Pension Fund v. Dorado Beach Hotel Corp., 617 F.3d 54, 66 (1st Cir. 2010). Such a result must be more than a "trivial success" or "purely procedural victor[y]." Hardt, 560 U.S. at 255 (alteration in original) (quoting Ruckelshaus, 463 U.S. at 688 n.9); see Gastronomical Workers, 617 F.3d at 66 (requiring a "merits outcome [that] produces some meaningful benefit for the fee-seeker").

Doe argues that our previous remand to the district court defining the scope of the record and clarifying the clear error standard of review made her eligible for attorneys' fees under ERISA. In so arguing, she relies primarily on Gross v. Sun Life Assurance Co. of Can., 763 F.3d 73 (1st Cir. 2014). In Gross, instead of reviewing a district court's denial of fees, we decided the claimant's eligibility for fees in the first instance and remitted to the district court to decide the appropriate amount. Id. at 75, 81. We reasoned that an ERISA claimant was eligible for fees where we had previously remanded to the district court with instructions to remand to the plan administrator for a new review of the claim. Id. at 77-78.

We need not decide, however, whether Doe's win in Doe I makes her eligible for attorneys' fees under ERISA. That is because the district court alternatively held that "[e]ven

- 14 -

assuming arguendo that Hardt and Gross apply and Jane is eligible for an award of attorneys' fees . . . such award is not warranted here." The standard guiding the district court's discretion in this analysis is set out in Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 225 (1st Cir. 1996). See Gross, 763 F.3d at 82 ("Although the Supreme Court in Hardt emphasized that the multi-factor tests traditionally used by courts to decide whether to award fees do not bear on the eligibility for fees under section 1132(g)(1), it allowed such inquiries as a second step to determine whether a claimant found eligible should be awarded fees. We continue to find useful the five factors delineated in our precedent." (internal citation omitted)). The factors "that customarily should be weighed in the balance" are the following:

> (1) [T]he degree of culpability or bad faith attributable to the losing party;
> (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award;
> (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances;
> (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and
> (5) the relative merit of the parties' positions.

Cottrill, 100 F.3d at 225 (citing Gray v. New Eng. Tel. & Tel. Co., 792 F.2d 251, 257-58 (1st Cir. 1986)).

In its written opinion, the district court explained its view that only the second factor weighed in Doe's favor. We

- 15 -

find no legal or clear factual error in that exercise of the district court's discretion. Doe argues that Harvard Pilgrim failed to adhere to its previous "clear agreement" as to the scope of the administrative record, making it more culpable than the district court appreciated under the first factor, and that without a fee award Harvard Pilgrim will not be held accountable for its behavior. Doe I, 904 F.3d at 7. But Doe I concerned a fact-specific procedural issue that is unlikely to arise often, and Harvard Pilgrim's position on that issue, although ultimately unsuccessful, was reasonable enough to convince the district court. See id. at 6-9. Doe also complains that the district court considered her subsequent loss in deciding whether to award fees for her interim gain. But because the degree of success on the merits may be considered in deciding whether an award of fees is potentially available in the first place, Hardt, 560 U.S. at 245, we see no reason why the district court in its discretion cannot consider whether and to what extent an interim procedural victory actually produced any benefits. See Gross, 763 F.3d at 83 (explaining that the Cotrill factors are not exclusive).

## III.

This case is not an easy one. Ascertaining coverage levels for mental illness can be challenging. Doe was represented by skilled and knowledgeable counsel who helped her put her strongest case forward. That case, though, failed to sway either

- 16 -

the independent OPP reviewer or the district judge who conducted yet another independent and de novo review.  Establishing clear error on appeal on such a record poses a difficult challenge for the same reasons that the coverage decision itself was difficult. Finding that Doe has not overcome that challenge, we <u>affirm</u> the district court's grant of summary judgment to the defendants and its denial of fees and costs to Doe.