# United States Court of Appeals
## For the First Circuit

No. 16-2085

JANE DOE,

Plaintiff, Appellant,

v.

STANDARD INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,* Associate Justice,
and Baldock,** Circuit Judge.

Geraldine G. Sanchez, with whom Roach Hewitt Ruprecht Sanchez
& Bischoff PC was on brief, for appellant.
Brooks R. Magratten, with whom Scott K. Pomeroy and Pierce
Atwood LLP were on brief, for appellee.

March 24, 2017

---

* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

** Hon. Bobby R. Baldock, Circuit Judge of the United States
Court of Appeals for the Tenth Circuit, sitting by designation.

**LYNCH**, **Circuit Judge**.  In this ERISA benefits suit for long term disability ("LTD") payments, the sum owed to the plaintiff, "Jane Doe," turns on the year of disability onset, as the prior year's earnings determine the monthly benefit amount. The parties disagree on whether Doe's disability began in 2011 or in 2012: the insurer has paid Doe the benefits owed using a January 2012 onset date, but not the benefits owed if the onset date is in November 2011.  The difference, we are told, amounts to over $100,000 in payments.

The wrinkle in the case is that the disability insurance involved is "Own Occupation" insurance, for which an additional premium is charged.  Doe's Own Occupation was "environmental lawyer."  Yet when the insurer assessed whether and when Doe became disabled, it chose not to use the material duties of an environmental lawyer, but rather those of a lawyer.  In doing so, it eviscerated the Own Occupation coverage, and its evaluation as to Doe's disability onset date was based on the wrong standards. Its denial of benefits from an onset date no later than November 2011 was arbitrary and capricious.  The district court entered judgment on the record for the insurer.  We reverse.

I.

A.  Background

Doe worked at a Maine law firm for more than 25 years, and for many years she was an equity partner.  In August 2011, Doe

became a non-equity partner and remained employed in that capacity for about six months thereafter.  Over the course of 2011, Doe billed far fewer hours than she had in previous years.

Defendant Standard Insurance Company ("Standard") is the claim administrator and insurer of the employee welfare benefit plan ("the Plan") offered by Doe's law firm to its employees.  The Plan was insured by an LTD policy ("the Policy"), which was also issued by Standard and which covered Doe.  The Policy provides that a claimant is "Disabled" if she is "unable to perform with reasonable continuity the Material Duties of [her] Own Occupation."  The Policy also promises lawyers with at least five years' experience that "[their] Own Occupation [is] the one legal subject matter area or type of legal practice in which [they] specialize, provided [they] have earned at least 85% of [their] gross professional service fee income in that area or type of practice" during the 24 months before disability onset.  There is no dispute that Doe met these criteria for specialty coverage. The Policy defines "Material Duties" as "the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted."

Under the Policy, those who become disabled due to a "Mental Disorder" may receive LTD benefits for, at most, 24 months.

- 3 -

The monthly benefit amount depends on the claimant's "Predisability Earnings."  The Predisability Earnings depend in turn on the claimant's income during the "prior tax year" -- that is, the calendar year before the year of disability onset.  Doe's income in 2011 was only one-third of what it had been in 2010, and so whether she became disabled in 2011 or in 2012 significantly affects the calculation of her monthly benefit payments.

For context, we recite briefly some of the medical evidence relevant to Doe's LTD claim.  On November 30, 2011, during her regular appointment with her gynecologist, Dr. Kathleen Petersen, Doe confessed that she had become "bone crushingly exhausted" in the preceding year and had lost "any interest in life," among other symptoms.  Dr. Petersen suspected that Doe was afflicted with a mental health problem.  She recommended that Doe seek counseling -- advice that Doe resisted -- and also doubled Doe's prescribed daily dose of citalopram, an antidepressant, which Doe had been taking for roughly four years.

On December 9, 2011, Doe met for the first time with Dr. Frederick White, a clinical psychologist.  Dr. White's notes from that visit state that Doe exhibited numerous symptoms consistent with Major Depressive Disorder -- including suicidal ideation and diminished attention, concentration, and memory -- and he diagnosed her with that disorder.  In two follow-up appointments

that same month, Dr. White observed that Doe "was having continuing mental disorder with suicidal ideation."

Dr. Petersen saw Doe on January 5, 2012, after having discussed Doe's condition with Dr. White earlier that day. In her notes, Dr. Petersen observed that Doe did not appear to be an imminent suicide risk, but that Doe was "severely depressed." When Dr. Petersen asked Doe about hospitalization for Doe's depression, Doe responded that "she [could not], that it would be a severe detriment to her [law] practice." At appointments later in January 2012, Dr. White and Dr. Petersen continued to observe that Doe was "dealing with . . . significant depression."

On February 8, 2012, Doe met with her primary care physician, Dr. Donna Conkling, for the first time since April 2011. Dr. Conkling postponed Doe's scheduled physical exam because Doe was "close to tears" and "appear[ed] anxious, depressed, and exhausted." Doe continued to report problems with severe depression and thoughts of self-harm or suicide. Doe also relayed that "[h]er husband was not completely supportive of her stopping work." Doe's last day of logging hours of work at the firm was January 27, 2012.

B.    Doe's Claim

Doe filed an LTD claim with Standard "on or about March 22, 2012." She reported that "she had suffered depression for approximately five years but became 'unable to work' . . . in

October 2011." As symptoms stemming from her "mental health [and] related [psychological] disorders," she listed, inter alia, "unable to process or think clearly while at work," "chronic fatigue," "migraine headaches," and "inability to function."

In February 2012, Dr. Petersen, Dr. Conkling, and Dr. White had independently completed Attending Physician's Statements in connection with Doe's LTD claim. Each physician diagnosed Doe with severe depression. Each also stated that he or she recommended Doe stop working.

On April 13, 2012, Doe's former law firm sent Standard a job description for Doe's specific occupation, environmental lawyer. Standard had requested the description from the law firm two days earlier, along with Doe's payroll history and timesheets. The firm also sent Doe's biography, which outlined Doe's career accomplishments and specific areas of expertise. Standard never told Doe or her representatives that the provided description was incomplete or inadequate.

Standard asked Jan Cottrell, one of its "vocational case manager[s]," to evaluate Doe's claim of disability. On April 12, 2012, Cottrell identified Doe's Own Occupation under the Policy as "lawyer," not "environmental lawyer." Having chosen "lawyer," Cottrell concluded that the material duties of a lawyer were "most reasonably represented by the Dictionary of Occupational Titles (DOT) occupation of Lawyer." The DOT is a compendium of job

descriptions and requirements, formerly published by the U.S. Department of Labor, which aims to define jobs as they are performed in the national economy and is commonly used by insurers. See McDonough v. Aetna Life Ins. Co., 783 F.3d 374, 380-81 (1st Cir. 2015); see also, e.g., Armani v. Nw. Mut. Life Ins. Co., 840 F.3d 1159, 1162 (9th Cir. 2016). There is no separate DOT job description for an environmental lawyer, and Standard did not look elsewhere for a definition.

Doe's claim specialist at Standard next asked Cottrell to respond to the job description received from Doe's law firm. On April 23, 2012, Cottrell responded that Doe did not meet the Policy's definition of "trial attorney" but that Doe's "own occupation would be the one legal subject matter area of environmental law." In spite of that conclusion, Cottrell reiterated that the DOT "lawyer" description "most reasonably represented" Doe's "own occupation."

On June 29, 2012, Standard denied Doe's claim. The claim specialist explained that Standard, having used the generic "lawyer" job description, had found Doe to be disabled from January 18, 2012 onward but not disabled beyond the Policy's "90 day Benefit Waiting Period." On January 25, 2013, Doe took her first

formal appeal and submitted additional information from Dr. White and Dr. Petersen.[1]

On March 27, 2013, Standard told Doe that it would approve her claim and that it would use January 28, 2012 as the disability onset date. On May 14, 2013, Doe took her second appeal and submitted additional statements from Dr. White, who wrote in support of a 2011 onset date.

Christopher Powers, another senior benefits review specialist at Standard, sought another "vocational review" from Karol Paquette, a vocational case manager at Standard. In a memo to Powers, dated July 23, 2013, Paquette stated that "the information in [Doe's] file document[ed] a significant change in the character of [Doe's] work activity around November 2011, such as area of specialization or subject matter, or in the type of work activity performed." "In my professional opinion," Paquette further explained, "[Doe] was not working in her own legal specialty or area of expertise on a reasonably continuous basis from 8/1/11 [to] 11/30/11." However, Paquette continued,

---

[1] After Doe's appeal, Standard referred the claim to Dr. Esther Gwinnell, a psychiatrist "who has done a significant number of reviews for . . . Standard." Dr. Gwinnell's report, dated March 6, 2013, acknowledged that Doe had received medical care for depression in late 2011 but concluded that Doe had not become disabled until February 6 or February 9, 2012. Standard's senior benefits review specialist, having reviewed the report, determined that Doe's disability had begun on January 28, 2012 -- "the day after [Doe] stopped work."

"[al]though [Doe] was not performing her own specialty area of expertise on a reasonably continuous basis prior to ceasing work, it would be my professional opinion[] that she was performing the work of a <u>lawyer</u> on a reasonably continuous basis" (emphasis added).  This analysis highlighted the difference between using Doe's specialty area of expertise as the measure and, by contrast, using the general standard for lawyers.

On July 24, 2013, Powers, to his credit, asked Paquette via email whether "the demands, aptitudes and temperaments of [Doe's] legal subject matter area [were] distinct from those of other areas of expertise to the extent that they would differ from those described in the DOT description for Lawyer."  Paquette responded on July 30, 2013, observing that "[t]here are some specialty practices defined in the DOT for lawyers[,] [but] [e]nvironmental law is not one of them."  Given that, she concluded that "the demands, aptitudes and temperaments of <u>[Doe's] legal subject matter area are the same as that of [the] DOT occupation of Lawyer</u>" (emphasis added).[2]  The record does not support this conclusion; it appears to be simply a repetition of her prior

_____

    [2]    In each of her reports, Paquette claimed to have "relied upon a variety of resources," including not only the DOT but also the Occupational Outlook Handbook and the Occupation Information Network.  However, her reports contain no analysis or discussion of those alternative resources.  Moreover, the reports do not suggest that she used those alternative resources to find and use a more specialized "environmental lawyer" job description, rather than another generic one.

decision to use a general "lawyer" standard, perhaps because there was no separate DOT listing for "environmental lawyer."

On August 21, 2013, on Standard's behalf, Powers issued a decision ("the Final Decision"), which upheld Standard's March 27, 2013 decision to award benefits to Doe based on a 2012 onset date. The Final Decision observed that Doe had performed "non-billable activities" from November 2011 to January 2012, "on an essentially full time basis," including "work on various boards and committees and pro bono work." "Therefore," the Final Decision went on, "while we acknowledge that your client did cease work in her particular area of legal expertise, she continued to work as an attorney on a reasonably continuous basis until January 28, [2012], in a position which would have had substantially similar demands and requirements. On that basis, we evaluated whether the medical information in the file supported impairment from working as an attorney within the scope of her license to practice law at any time prior to January 28, 2012." The Final Decision further explained that "while we recognize that your client found her work to be stressful and sought to transition to a different type of practice, this does not correspond to an inability to perform the Material Duties of her Own Occupation on a reasonably continuous basis for any employer."

After hiring counsel, Doe requested a reconsideration of the Final Decision -- specifically, the disability onset date --

on August 29, 2014. She submitted sworn statements from herself, Dr. Petersen, and Dr. White. In a letter dated September 16, 2014, Standard refused to reconsider the Final Decision or to consider Doe's new information, explaining that Standard had already afforded Doe "the one administrative review to which Doe was entitled."

## II.

As our review of the district court's judgment is de novo, see McDonough, 783 F.3d at 379, we bypass recounting the district court proceedings. After cross-motions for judgment on the record, the district court entered judgment for Standard.[3]

This appeal concerns only what disability onset year should be used to calculate Doe's monthly benefit amount. There is no dispute that Doe is entitled to a full 24 months of LTD benefits with a disability onset in 2011, if Standard's decision to use the 2012 onset date was arbitrary and capricious.

The parties agree that the Plan gives Standard discretionary authority to evaluate claims, so we review for abuse of discretion -- that is, we determine "whether [Standard's] decision is arbitrary and capricious or . . . whether that decision

---

[3] In the context of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, "motions for summary judgment . . . are nothing more than vehicles for teeing up [the] case[] for decision on the administrative record." Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 813 F.3d 420, 425 n.2 (1st Cir. 2016).

is reasonable and supported by substantial evidence on the record as a whole." Id.; see also Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008). We "determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together." Glenn, 554 U.S. at 117.[4]

We agree with Doe that Standard's reliance on the DOT description of a generic "lawyer," rather than a job description that fully and accurately encompassed the material duties of Doe's specialized area of legal practice, rendered Standard's decision arbitrary and capricious. The Plan defines the key inquiry as whether Doe was disabled from performing the material duties of her Own Occupation, and so "a reasoned determination of the existence of disability vel non require[d], inter alia, a review of the material duties of [Doe's] particular position." McDonough, 783 F.3d at 380. Standard was obligated to "assess[] whether and to what extent . . . [Doe's] impairments compromised h[er] ability to carry out" the specialized duties of an environmental lawyer. Id. Standard charged an enhanced premium for the promise of enhanced specialty coverage, and it was unreasonable for Standard

---

[4] One relevant factor is Standard's inherent conflict of interest as the entity that "not only evaluates claims but also underwrites the plan." Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan, 705 F.3d 58, 62 (1st Cir. 2013); see also Glenn, 554 U.S. at 112, 117–19; McDonough, 783 F.3d at 379. We do not rely on that factor here.

to undercut that coverage by failing to ascertain and consider the specific requirements of Doe's specialty.

The vocational reports, and the conclusions Standard drew from those vocational reports in the Final Decision, demonstrate at most that Standard made a reasonable effort to analogize Doe's specialty occupation to a job description in the DOT. Although a generic DOT "position description" may suffice if it involves duties equivalent to those of the claimant's own occupation, id. at 381 (citing Tsoulas v. Liberty Life Assurance Co. of Bos., 454 F.3d 69, 78 (1st Cir. 2006)), that is not the case here. It was unreasonable for Standard to base its decisionmaking on a generic DOT description that did not account for the special expertise expected from environmental lawyers. See id.; Miller v. Am. Airlines, Inc., 632 F.3d 837, 855 (3d Cir. 2011) ("[B]ecause the Plan provides 'own occupation' disability benefits, it is essential to consider whether a pilot is capable of working in that capacity, regardless of his ability to function in a different position."). The fact that the DOT does not have a listing for "environmental lawyer" does not make Standard's decision any less arbitrary.

No evidence in the record supports the assumption that "environmental lawyer" and "lawyer" are equivalent terms that may be used interchangeably. We think that they self-evidently are not and that Standard's assumption of equivalence was arbitrary.

- 13 -

Environmental law is a distinct specialty, and the expertise demanded from environmental lawyers distinguishes that specialty from a generic "lawyer" role.  Standard received from Doe's former law firm a job description outlining the duties and expectations associated with Doe's specialized area of practice, as well as her resume, which confirmed her expertise as an environmental lawyer. That firm is by no means unique in treating environmental law as a distinct specialty.  We take judicial notice that the firm representing Standard in this matter, for example, lists "Environmental" as a distinct practice group on its website.  See Environmental, Pierce Atwood LLP, http://www.pierceatwood.com /environmental-land-use.  The American Bar Association, in similar fashion, includes "Environment, Energy, and Resources" among its "specialty groups that focus on a unique area of law."  See Sections, Am. Bar Ass'n, http://www.americanbar.org/groups /sections.html.  And the U.S. Department of Justice has a discrete Environment and Natural Resources Division.  See About the Division, U.S. Dep't of Justice, http://www.justice.gov/enrd/about -division.

The proper inquiry, therefore, is whether the record contains substantial evidence that Doe was able to "perform with reasonable continuity the Material Duties" of an environmental lawyer beyond 2011.  Standard conceded in the Final Decision that Doe did not actually practice "in her own specialty area of

expertise . . . after November 2011." And Standard's own vocational case manager, Karol Paquette, opined that there had been a significant change in the character of Doe's work activity around November 2011 and that "[Doe] was not working in her own legal specialty or area of expertise on a reasonably continuous basis from 8/1/11 [to] 11/30/11." Its choice of January 28, 2012 as Doe's disability onset date depended on Doe's completion of a few generic lawyer tasks, such as attending committee meetings, in December 2011 and January 2012. As we have already explained, it was arbitrary and capricious to use a generic lawyer's material duties as the analytical benchmark.[5]

The next question is the appropriate remedy. We have "considerable latitude in the selection of a remedy in an ERISA case," and our choice "depends on the circumstances of the particular case." Colby, 705 F.3d at 68; see also Buffonge v. Prudential Ins. Co. of Am., 426 F.3d 20, 31-32 (1st Cir. 2005); Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 130-32 (1st Cir. 2004) ("In [the ERISA] context, no single answer fits all

---

[5] To the extent Standard argues that Doe's volunteering to do non-billable and pro bono work in November 2011 -- including bar association work and "work on various boards and committees" -- shows that she was not yet disabled from her Own Occupation at that time, that too is arbitrary. The argument is a non sequitur. Further, "[a] disabled person should not be punished for heroic efforts to work by being held to have forfeited [her] entitlement to disability benefits should [she] stop working." Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914, 918 (7th Cir. 2003).

cases."). In light of Standard's failure to apply the Own Occupation standard correctly, over the course of several administrative appeals, we think it most equitable in these circumstances to bring an end to this dispute and to award Doe retroactive benefits instead of remanding the matter to Standard. It is now 2017, and the dispute concerns events in 2011 and 2012. See Colby, 705 F.3d at 68 ("[A court] is not obliged to make an endless series of remands [in an ERISA case]."); Glista, 378 F.3d at 131 (discussing the "range of remedial powers" Congress gave to the federal courts for addressing ERISA violations through equitable relief (citing 29 U.S.C. § 1132(a)(3))); Cook v. Liberty Life Assurance Co. of Bos., 320 F.3d 11, 23-24 (1st Cir. 2003) (explaining that plan administrators often do not "get a second bite at the apple" after making an arbitrary and capricious determination (quoting Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1163 (9th Cir. 2001))).

Doe has requested attorney's fees, as ERISA allows. See 29 U.S.C. § 1132(g)(1). That request is highly fact-sensitive, and we leave it for the district court to address in the first instance on remand. See Gross v. Sun Life Assurance Co. of Can., 763 F.3d 73, 85-86 (1st Cir. 2014).

## III.

The judgment is reversed, and the district court is directed to order Standard to award Doe retroactive benefits based

on a disability onset date of no later than 2011.  Doe's request for attorney's fees is remanded to the district court.

The Clerk is directed to send a copy of this opinion to the Superintendent of the Maine Bureau of Insurance.