# United States Court of Appeals
## For the First Circuit

No. 21-1833

UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC; UNITED STEELWORKERS, LOCAL 12003,

Plaintiffs, Appellants,

v.

NATIONAL GRID; BENEFITS COMMITTEE OF NATIONAL GRID USA SERVICE COMPANY, as Plan Administrator for the Boston Gas Company Union Employees Pension Plan,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Lynch, Kayatta, and Gelpí,
Circuit Judges.

Matthew Lutwen, with whom Katharine J. Shaw, Alfred Gordon O'Connell, and Pyle Rome Ehrenberg PC were on brief, for appellants.
Patrick M. Collins, with whom Ogletree, Deakins, Nash, Smoak & Stewart, P.C. was on brief, for appellees.

June 28, 2022

**LYNCH**, **Circuit Judge**.  This case arises at the intersection of fiduciary-responsibility law under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., and federal labor arbitration law under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., and the Labor Management Relations Act of 1947 ("Taft-Hartley Act"), 29 U.S.C. § 141, et seq.  It requires a close examination of the governing documents to determine whether the district court erred in denying arbitration requested by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and the United Steelworkers Local 12003 (collectively, "Union") on behalf of two former employees of the Boston Gas Company -- since acquired by National Grid ("Company") -- as to their claims for pension benefits.  The only question we decide is whether certain disputes in this case must go to arbitration under the pertinent documents.

The Union represented the two members, Harry Barnard and Andrew Colleran, in filing grievances asserting that they had been improperly underpaid their pensions upon retirement from the Company.  The Union submitted the grievances to the pertinent Joint Pension Committee ("JPC"), formed under the Boston Gas Company Union Employees' Pension Plan ("BGC Pension Plan").  The JPC deadlocked in a tie and was unable to resolve the dispute.  As the terms of the BGC Pension Plan provided in the case of a deadlock,

the Union then sought arbitration over the grievances; the Company refused to arbitrate.

The Union next filed a complaint in federal court against the Company and the Retirement Plans Committee of National Grid USA Service Company as plan administrator for the BGC Pension Plan ("Plan Administrator"), seeking to compel arbitration over the dispute. The district court declined to order arbitration as called for in the BGC Pension Plan. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. National Grid, No. 20-11491, 2021 WL 4441214, at *6 (D. Mass. Sept. 28, 2021).

We reverse, remand, and direct the district court to refer the matter to arbitration.

## I.  Background

### A.  Key Documents

We describe in detail the key documents in this case: the collective bargaining agreement ("CBA"), the KeySpan Retirement Plan ("Master Plan"), and the BGC Pension Plan, a component plan of the Master Plan.[1]  The parties each argue that

---

[1]    In 2000, KeySpan Corporation acquired Eastern Enterprises, the parent company of Boston Gas Company. See S. Moeller, Local Gas Company Buyout Competed, Cape Cod Times (Nov. 25, 2000, 1:00 AM), https://www.capecodtimes.com/story/news/2000/11/25/local-gas-company-buyout-completed/51013887007/. In 2007, National Grid, in turn, acquired KeySpan Corporation. See National Grid, KeySpan Complete $11.8B Merger, Nat. Gas Intel. (Aug. 27,

the text of these documents requires judgment in their favor. The Union and the Company are parties to the CBA, which sets forth pension benefits for certain employees. These benefits are described in further detail in the Master Plan and in Addendum M to the Master Plan, which is the BGC Pension Plan.

The Master Plan details certain provisions of the pension plan for all National Grid employees, regardless of the acquired company for whom the employees originally worked. The BGC Pension Plan provides for additional governing terms for Union members formerly employed by the Boston Gas Company and its successors, like Barnard and Colleran. It provides for the creation of the JPC and the delegation of certain Plan Administrator fiduciary obligations to the JPC.

1. <u>Collective Bargaining Agreement</u>

The current CBA is in effect from January 20, 2019, to June 16, 2024. The CBA provides, inter alia, for pension benefits for employees hired before January 20, 2019. The CBA refers to

---

2007), https://www.naturalgasintel.com/national-grid-keyspan-complete-11-8b-merger-2/. The Master Plan retained the "KeySpan" title despite the acquisition.

The Master Plan contains twenty different component plans that were each merged into the Master Plan because the Company (National Grid) has acquired a number of companies over time that each had their own pension plans before their acquisitions, including the Boston Gas Company. Addendum M to the Master Plan, the BGC Pension Plan, is the only component plan at issue.

the Master Plan and the BGC Pension Plan.  The CBA itself also details many of the core terms in the Master Plan and the BGC Pension Plan.  The CBA states that "[n]othing herein will be construed to alter, amend or in any way change the provisions of the Boston Gas Company Union Employees' Pension Plan.  Complete benefit details are contained in the Plan Document."  Thus, we turn to the plan documents.

    2.    <u>Plan Documents and Delegations to the JPC Under ERISA</u>

    i.    <u>Master Plan</u>

The Master Plan designates the Retirement Plans Committee as the plan administrator of the Master Plan under Section 3(16)(A) of ERISA.  <u>See</u> 29 U.S.C. § 1002(16)(A).  Under the Master Plan, the Plan Administrator "shall have all powers, authority and discretion necessary or helpful for carrying out its responsibilities under the Plan."  The Master Plan provides that the Plan Administrator "shall have full power and complete discretion:"

> (a) To make rules and regulations for the administration of the Plan which are not inconsistent with the terms and provisions of the Plan and applicable law;
>
> (b) To construe and interpret all terms, provisions, conditions and limitations of the Plan and to determine all questions arising out of or in connection with the provisions of the Plan or its administration, including, but not limited to, interpretive or factual questions regarding eligibility, vesting and the amount, manner and timing of payment of

benefits, and the Committee's determination on all such issues shall be final and binding on all persons and subject to the fullest deference permitted by law;

. . .

(e) To prescribe procedures to be followed by Participants, Spouses, . . . and Beneficiaries for the filing of applications for benefits; [and]

(f) To prepare and distribute, or cause to be prepared and distributed, such Participant disclosures, notices and other communications as may be required by law or otherwise determined necessary or desirable by the Committee; . . . .

Other text in the Master Plan and in the BGC Pension Plan provides that the Plan Administrator may delegate these powers to others.

Section 7.2 of the Master Plan, for example, provides that "[i]n accordance with Section 405(c) of ERISA, the [Retirement Plans] Committee shall have the right . . . to designate persons other than the Committee to carry out fiduciary responsibilities (other than trustee responsibilities) under the Plan." See 29 U.S.C. § 1105(c) (providing that a plan administrator may delegate fiduciary responsibilities if permitted by the ERISA plan).

The Master Plan separately establishes a claims procedure pursuant to Section 503 of ERISA. See 29 U.S.C. § 1133. The review process applies to the denial of a claim for benefits under the plan and permits a claimant to request, through written notice, that the Plan Administrator "conduct a full and fair review

of the denial of the claim."  If the claim is denied on review, the claimant may then bring a civil action under Section 502(a) of ERISA.  See 29 U.S.C. § 1132(a).

### ii.  BGC Pension Plan

In furtherance of the Master Plan's provision providing for the delegation of fiduciary duties, the BGC Pension Plan provides pension benefits to individuals employed by the Boston Gas Company and its successors through provisions delegating the Plan Administrator's authority.  The BGC Pension Plan was established in 1971.  In 2003, after KeySpan Corporation acquired Boston Gas Company, the BGC Pension Plan was consolidated with other retirement plans maintained by KeySpan Corporation and became a component plan of the Master Plan.  Since at least 1971, the provisions of the BGC Pension Plan have been amended by the Union and the Company in collective bargaining agreements.  The Company's right to amend the BGC Pension Plan is subject to the terms of the CBA.

Article 12 of the BGC Pension Plan outlines the "Administration of the Plan" and states that "[e]xcept as otherwise stated in this Article 12, the administration rules of the [BGC Pension] Plan are set forth in the Master Plan."  The terms of the BGC Pension Plan thus supersede those of the Master Plan where they are otherwise stated in the BGC Pension Plan.

Article 12 of the BGC Pension Plan provides for the creation of a JPC as a plan fiduciary composed of three members appointed by the Union and three members appointed by the Plan Administrator. Article 2 of the BGC Pension Plan defines the JPC as:

> the Committee appointed to resolve questions relating to eligibility as set forth in Article 12, and such Committee shall discharge its duties as a fiduciary in accordance with the standards established under ERISA with respect to any person who exercises any discretionary authority or responsibility in the administration of the Plan.

We highlight several pertinent provisions. Under Article 12, the JPC "shall have such powers as are necessary for the proper execution of its duties under the Plan, including . . . [t]o make determinations as to the rights of any Employees applying for or receiving Retirement Allowances."

Article 12 sets forth a mandatory arbitration clause for disputes as follows:

> 12.025. <u>Arbitration</u>. In the event that the members of a Joint Pension Committee cannot settle <u>any dispute</u>, with the exception of determining whether an Employee is disabled, the whole matter <u>will be referred to arbitration</u>. The fees for such arbitration will be paid jointly by the parties involved. No matter regarding the Plan or any difference arising thereunder shall be subject to the grievance procedure of a Collective Bargaining Agreement.

(second and third emphases added). Article 12 also provides:

- 8 -

>> 12.027. <u>Referral Back to Parties</u>. Any case referred to a Joint Pension Committee on which it has no power to rule shall be referred back to the parties without ruling.[2]

## B.    **Procedural History**

### 1.    <u>The Union's Grievances</u>

On January 3, 2020, the Union filed grievances under the CBA on behalf of Barnard and Colleran. The Union asserted that Barnard and Colleran, who applied for pension benefits upon

---

[2]    Article 12 further includes the following relevant provisions:

> 12.026. <u>No Power to Modify</u>. The Joint Pension Committees shall have no power to add to or subtract from or modify any of the terms of the Plan nor to change or add to any benefit provided by the Plan, nor to waive or fail to apply any provision of the Plan.
>
> . . .
>
> 12.029.  <u>No Appeal After Review of Claim</u>. Subject to the provisions of Section 503 of ERISA and to the "Rules and Regulations for Administration and Enforcement" issued by the Department of Labor under Title 29, Part 2560 of the United States Code, which requires that every pension plan shall provide both a procedure for presenting claims and a procedure for a fair review of claims which shall comply with the regulations of the Department of Labor, there shall be no appeal from any ruling by a Joint Pension Committee which is within its authority; and each such ruling shall be final and binding on the Union and its members, the Employee or Employees involved, and on the Plan Administrator.

retirement, did not receive the proper pension payments required under the CBA.

On February 4, 2020, after failing to resolve the grievances, the Union sought arbitration under the CBA. On February 10, the Company rejected the Union's request to arbitrate the grievances, stating that "[p]ursuant to the terms of the parties' collective bargaining agreement, the grievance is not arbitrable." Instead, the Company wrote that "[t]he Claims Review Procedure is the exclusive means by which a Participant must make a claim for benefits under the Pension Plan, subject to his right to bring a civil action under Section 502(a) of ERISA."

The Union then submitted Barnard's and Colleran's grievances to the JPC for a determination of their rights under the BGC Pension Plan. On June 9, 2020, the JPC met to consider Barnard's and Colleran's claims that they were eligible for further benefits but deadlocked in a tie. The JPC then notified the parties that it was unable to resolve the dispute. The JPC did not explicitly state whether it was referring the matter back to the parties under Section 12.027 of the BGC Pension Plan, which provides: "Any case referred to a Joint Pension Committee on which it has no power to rule shall be referred back to the parties without ruling." The JPC's vote on the grievance ended in a tie. The record is not clear about the basis for that tie.

On June 15, the Union contacted the Company to propose potential arbitrators to arbitrate the disputes under Section 12.025 of the BGC Pension Plan. On July 14, the Company again refused arbitration and stated that the disputes were not arbitrable under the BGC Pension Plan. In the letter ("July 14 letter"), the Company stated:

> [Barnard's and Colleran's] disputes concern a rule established by the Plan Administrator that an individual must contact the Pension Connect Center at least 45 days in advance of his planned retirement date. Such disputes, however, are not arbitrable. . . .
>
> The JPC is formed under Section 12.02 of the Pension Plan, in addition to the Plan Administrator, "to determine <u>questions of eligibility</u> under the Plan." There is no "question of eligibility" concerning Mr. Colleran or Mr. Barnard. Each has been determined eligible for and is receiving benefits under the Pension Plan. Because there is no question of eligibility, there is [no] dispute that would be arbitrable under section 12.025.

The letter also restated the Company's position that "[t]he Claims Review Procedure is the exclusive means by which a Participant must make a claim for benefits under the Pension Plan, subject to his right to bring a civil action under Section 502(a) of ERISA."

2.   <u>District Court's Denial of Arbitration</u>

On August 7, 2020, the Union filed a complaint in the United States District Court for the District of Massachusetts

- 11 -

alleging two causes of action.  The Union brought Count I pursuant

to the Taft-Hartley Act and the FAA seeking to compel arbitration

under the CBA.  The Union brought Count II pursuant to the FAA

seeking to compel arbitration under the BGC Pension Plan.[3]

The defendants moved to dismiss the complaint pursuant

to Federal Rules of Civil Procedure 12(b)(1) and (b)(6).  On

September 28, 2021, the district court granted the motion and

dismissed the complaint.  United Steel, 2021 WL 4441214, at *6.

As to Count I, the court held that the pension grievances were not

arbitrable under the CBA.  Id. at *4.  As to Count II, the court

held that the JPC did not have authority to rule on the grievances,

and, therefore, the arbitration provision set forth in Section

12.025 of the BGC Pension Plan was inapplicable.  Id. at *5.  The

---

[3]    The Union has standing to bring suit to compel
arbitration under Section 12.025 of the BGC Pension Plan.  The
Union meets the three requirements for standing as outlined by the
Supreme Court:  (1) it suffered an "injury in fact" because of its
inability to arbitrate the dispute on behalf of its members;
(2) the injury is causally connected to the Company's refusal to
arbitrate; and (3) the injury will be redressed by a favorable
decision.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61
(1992).

The Company's argument that only JPC members may refer
disputes to arbitration incorrectly reads the language of the BGC
Pension Plan, which provides under Section 12.025 that "[i]n the
event that the members of a Joint Pension Committee cannot settle
any dispute, . . . the whole matter will be referred to
arbitration."  The BGC Pension Plan is ambiguous as to who refers
the matter to arbitration and places no limitations on who may sue
to compel arbitration.

- 12 -

court further held that "[t]he Plan Administrator's determination to this effect was not arbitrary and capricious."  Id.

The Union timely appealed the district court's holding as to Count II.  The Union has not appealed the district court's dismissal of Count I.

## II.  Clear Delegations of Discretionary Authority to the JPC

The governing law is well established.  The Supreme Court has held that a challenge to the denial of benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  "We have long recognized that the threshold question in determining the standard of review is whether the provisions of the benefit plan at issue 'reflect a clear grant of discretionary authority to determine eligibility for benefits.'"  Gross v. Sun Life Assur. Co. of Can., 734 F.3d 1, 13 (1st Cir. 2013) (emphasis in original) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 15 (1st Cir. 2002)).  The authority must be expressly provided for, see Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 583–84 (1st Cir. 1993), and the plan "must offer more than subtle inferences," Gross, 734 F.3d at 16.  Where a pension plan makes such a clear grant of authority, the administrator's decision will be upheld "unless it is arbitrary, capricious, or an abuse of

- 13 -

discretion." Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc., 813 F.3d 420, 427 (1st Cir. 2016).

Further, "ERISA allows named fiduciaries to delegate responsibilities (other than trustee responsibilities) through express procedures provided in the plan." Rodriguez-Abreu, 986 F.2d at 584. For a proper delegation of authority, "the delegation must be clear and the fiduciary must properly designate a delegate for the fiduciary's discretionary authority." Rodríguez-López v. Triple-S Vida, Inc., 850 F.3d 14, 19, 22-23 (1st Cir. 2017).

An ERISA plan may also delegate discretionary authority to a neutral arbitrator to break deadlocks. See Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan, 694 F.3d 557, 568-69 (5th Cir. 2012) ("[T]he Supreme Court and this court have reinforced the propriety of plan administrators' utilization of a neutral arbitrator to break a deadlock."). The Taft-Hartley Act expressly permits an ERISA plan with employee and employer representatives to utilize an impartial arbitrator to break a deadlock: "[U]pon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute." 29 U.S.C. § 186(c)(5)(B). The Supreme Court has endorsed the use of a neutral arbitrator to break a deadlock as consistent with the purposes of the Taft-Hartley Act. See N.L.R.B.

- 14 -

v. Amax Coal Co., 453 U.S. 322, 337-38 (1981) ("[Section] 302(c)(5) [of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5)] explicitly provides for the compulsory resolution of any deadlocks among welfare fund trustees by a neutral umpire.").

Here, the BGC Pension Plan, by its clear terms, designates the JPC as a fiduciary and delegates discretionary fiduciary responsibilities under ERISA to the JPC in several areas. See Rodríguez-López, 850 F.3d at 23; Terry v. Bayer Corp., 145 F.3d 28, 37-38 (1st Cir. 1998) ("ERISA allows named fiduciaries to delegate responsibilities by expressly providing for procedures for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan." (cleaned up)).

The JPC "shall have such powers as are necessary for the proper execution of its duties" and is authorized to decide under Section 12.027 the matters on which it has "power to rule." That latter power includes the authority to resolve "questions relating to eligibility":

> the Committee appointed to resolve questions relating to eligibility as set forth in Article 12, and such Committee shall discharge its duties as a fiduciary in accordance with the standards established under ERISA with respect to any person who exercises any discretionary authority or responsibility in the administration of the Plan.

In addition to these delegations, the BGC Pension Plan delegates discretionary authority over other questions to the JPC. For example, the BGC Pension Plan delegates to the JPC the power (1) to decide whether an employee is disabled under Section 12.025 ("In the event that the members of a Joint Pension Committee cannot settle any dispute, with the exception of determining whether an Employee is disabled . . . ."); (2) to determine how benefits will be distributed upon termination of the pension plan under Section 13.03 ("The benefits provided for in this Article 13 may be distributed . . . as determined by the Joint Pension Committee . . . ."); and (3) to find a beneficiary incompetent under Section 15.03 ("If the Joint Pension Committee shall find that any person to whom a benefit is payable from the Fund is unable to care for his affairs because of illness or accident . . . .").

Under federal substantive law, we must consider the entire text of the relevant documents. See Pac. Gas & Elec. Co. v. United States, 536 F.3d 1282, 1288 (Fed. Cir. 2008). Considering the entire text, we note the express delegation under Section 2.13 of the BGC Pension Plan that the JPC is "appointed to resolve questions relating to eligibility" (emphasis added).[4] The

---

4    Section 12.02 of the BGC Pension Plan states that the JPC shall be "formed to determine questions of eligibility under the Plan."  We do not read this statement of purpose to be a limit

- 16 -

inclusion of the words "relating to" explicitly indicates that this delegation is broader than the other delegations under the BGC Pension Plan.  See NOAA Md., LLC v. Adm'r of Gen. Servs. Admin., 997 F.3d 1159, 1166 (Fed. Cir. 2021) ("We must interpret a contract in a manner that gives meaning to all of its provisions and makes sense, and we seek to avoid conflict or surplusage of the contract's provisions." (cleaned up)).  The Supreme Court and this circuit have consistently stated that the phrase "relating to" is a broad one.  See, e.g., Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383-84 (1992) ("The ordinary meaning of these words is a broad one -- 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" (quoting Black's Law Dictionary 1158 (5th ed. 1979))); Moore v. Elec. Boat Corp., 25 F.4th 30, 35 n.4 (1st Cir. 2022).

Further, Section 12.025 of the BGC Pension Plan provides a delegation of authority to a neutral arbitrator in the event the JPC deadlocks, which serves the purposes of the Taft-Hartley Act,

on the JPC's authority, particularly where other provisions in the BGC Pension Plan expressly provide that the scope of the JPC's authority exceeds "questions of eligibility."  See NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("When interpreting the contract, the document must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts.").

- 17 -

as recognized by the Supreme Court. <u>See</u> 29 U.S.C. § 186(c)(5)(B); <u>Amax Coal Co.</u>, 453 U.S. at 337-38.

The question at the heart of this case is whether the Union's grievances fall within the JPC's purview as "questions relating to eligibility," and thus are subject to arbitration in the event of a deadlock. However, there is an initial threshold question as to whether the JPC, under the documents, has the authority to decide whether it has "power to rule."

In answering that question, "we review the language of the Plan <u>de novo</u>, just as we would review the language of any contract." <u>Stephanie C.</u>, 813 F.3d at 428 (quoting <u>Ramsey</u> v. <u>Hercules Inc.</u>, 77 F.3d 199, 205 (7th Cir. 1996)). When reviewing the language of an ERISA benefit plan, we look to federal substantive law and "common-sense canons of contract interpretation." <u>Bellino</u> v. <u>Schlumberger Techs., Inc.</u>, 944 F.2d 26, 29 (1st Cir. 1991) (quoting <u>Burnham</u> v. <u>Guardian Life Ins. Co. of Am.</u>, 873 F.2d 486, 489 (1st Cir. 1989)).

The Company argues that as a matter of law, the authority to decide whether the JPC had the "power to rule" on the grievances was retained by the Plan Administrator in the Master Plan.

We disagree. Nowhere in either the Master Plan or the BGC Pension Plan does the plain text "unambiguously indicate" that the Plan Administrator retained the authority to determine whether a dispute is within the JPC's "power to rule." <u>Stephanie C.</u>, 813

- 18 -

F.3d at 428 ("The phraseology that [defendant] chose to use in the Certificate to describe its decisionmaking authority is capable of supporting reasonable differences of opinion as to the nature and extent of the authority reserved to [defendant]."); see Gross, 734 F.3d at 16.

To the contrary, Section 12.027 of the BGC Pension Plan states that the authority to determine whether a matter falls within or outside the JPC's "power to rule" has been delegated to the JPC: "Any case referred to a Joint Pension Committee on which it has no power to rule shall be referred back to the parties without ruling." Under Article 12, the JPC necessarily must have the power to make that determination. In addition, under Section 12.029, the JPC's decisions "within its authority" are "binding on . . . the Plan Administrator."

The first issue for the arbitrator is to determine whether the JPC has the "power to rule" on the grievances. If so, the resolution of the ambiguity in the record as to the basis of the JPC's deadlock and whether to then proceed to resolve the merits of the Union's grievances are matters for the arbitrator to decide. We note, again, that the jurisdiction of the JPC is not limited to "questions of eligibility" under the plain terms of the BGC Pension Plan. The "relating to" language under the BGC Pension

Plan indicates that the JPC's delegated authority is broader than just "questions of eligibility."[5]

Finally, the Company protests that a reading of the JPC's authority which would result in sending these matters to arbitration would necessarily mean that the JPC has the authority to resolve "virtually any dispute over vesting, amount or form of pension benefits." The Company is free to argue that to the arbitrator. We do point out that the delegation of authority described above does not render the Master Plan's claims procedure superfluous, as the Master Plan's claims procedure would still apply to other Company employees covered by the Master Plan but not subject to the BGC Pension Plan.

It is up to an arbitrator, not a court, to determine the matters described above. The arbitrator will determine whether the JPC has the power to resolve the disputes, and, if so, whether the arbitrator should proceed to address the merits in the wake of the JPC's deadlock.

---

[5] Further, the BGC Pension Plan indeed grants the JPC authority to decide issues that do not fall under the Plan Administrator's limited definition of "eligibility," including the power to decide whether an employee is disabled, the power to determine how benefits will be distributed upon termination of the pension plan, and the power to find a beneficiary incompetent and designate who may receive their pension payment.

### III. Conclusion

<u>Reversed</u> and <u>remanded</u> to the district court with directions to grant the Union's request for arbitration.